Mark E. Merin (State Bar No. 043849)
Paul H. Masuhara (State Bar No. 289805)
LAW OFFICE OF MARK E. MERIN
1010 F Street, Suite 300
Sacramento, California 95814
Telephone: (916) 443-6911
Facsimile: (916) 447-8336
E-Mail: mark@markmerin.com
paul@markmerin.com

Attorneys for Plaintiffs
ESTATE OF STEVEN AYALA
and EMILY AYALA-ZIMMER

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

FRESNO DIVISION

ESTATE OF STEVEN AYALA and EMILY AYALA-ZIMMER,

Plaintiffs,

vs.

COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE, VERNON WARNKE, CALIFORNIA FORENSIC MEDICAL GROUP, INC., WELLPATH LLC, WELLPATH MANAGEMENT, INC., JOSHUAH JACKSON, CHRISTIAN COLLAZO, TERESA VINCE, and DOE 1 to 20,

Defendants.

Case No.

**COMPLAINT FOR VIOLATION OF CIVIL AND CONSTITUTIONAL RIGHTS**

**DEMAND FOR JURY TRIAL**

## INTRODUCTION

43-year-old STEVEN AYALA was denied necessary healthcare services and observation as a pretrial detainee at the Merced County Main Jail and John Latorraca Correctional Facility while in custody of the COUNTY OF MERCED and MERCED COUNTY SHERIFF'S OFFICE resulting in his death on May 11, 2025.

**JURISDICTION & VENUE**

1. This Court has jurisdiction over the federal claims under 28 U.S.C. § 1331 (in that they arise under the United States Constitution) and 28 U.S.C. § 1343(a)(3) (in that the action is brought to address deprivations, under color of state authority, of rights, privileges, and immunities protected by the U.S. Constitution). This Court has jurisdiction of the state claims under 28 U.S.C. § 1367.

2. Venue is proper in the United State District Court for the Eastern District of California pursuant to 28 U.S.C. § 1391(b) because Defendants are located in the Eastern District of California and because many of the acts and/or omissions described herein occurred in the Eastern District of California.

3. Intradistrict venue is proper in the Fresno Division of the Eastern District of California pursuant to Local Rule 120(d) because the claims asserted herein arise from acts and/or omissions which occurred in the County of Merced, California.

**EXHAUSTION**

4. On June 16, 2025, the ESTATE OF STEVEN AYALA and EMILY AYALA-ZIMMER submitted a government claim to the COUNTY OF MERCED and MERCED COUNTY SHERIFF'S OFFICE relating to the claims asserted in this action.

5. By August 4, 2025, the COUNTY OF MERCED and MERCED COUNTY SHERIFF'S OFFICE failed or refused to act on the claim.

**PARTIES**

6. Plaintiff ESTATE OF STEVEN AYALA appears by and through real-party-in-interest Plaintiff EMILY AYALA-ZIMMER, the biological child of STEVEN AYALA, who brings this action pursuant to California Code of Civil Procedure § 377.30. Plaintiff EMILY AYALA-ZIMMER is the successor-in-interest to STEVEN AYALA. Plaintiff EMILY AYALA-ZIMMER's declaration regarding status as the successor-in-interest to STEVEN AYALA is attached, pursuant to California Code of Civil Procedure § 377.32.

7. Plaintiff EMILY AYALA-ZIMMER is a resident of the County of Humboldt, California. Plaintiff EMILY AYALA-ZIMMER is the biological daughter of STEVEN AYALA. Plaintiff EMILY AYALA-ZIMMER brings this action: (1) in a representative capacity as the successor-in-interest, on behalf of STEVEN AYALA; and (2) in an individual capacity, on behalf of herself.

8. Defendant COUNTY OF MERCED is located in the State of California. Defendant COUNTY OF MERCED is a "public entity" pursuant to California Government Code § 811.2.

9. Defendant MERCED COUNTY SHERIFF'S OFFICE located in the County Of MERCED, California. Defendant MERCED COUNTY SHERIFF'S OFFICE is a "public entity" pursuant to California Government Code § 811.2.

10. Defendant VERNON WARNKE is and was, at all times material herein, a law enforcement officer and Sheriff for Defendants COUNTY OF MERCED and MERCED COUNTY SHERIFF'S OFFICE, acting within the scope of employment and under color of state law. Defendant VERNON WARNKE is sued in an individual capacity.

11. Defendant CALIFORNIA FORENSIC MEDICAL GROUP, INC. is a California corporation doing business in the State of California, as a contracted provider of healthcare services to Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE, and VERNON WARNKE's correctional facilities.

12. Defendant WELLPATH LLC is a Delaware corporation doing business in the State of California, as a contracted provider of healthcare services to Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE, and VERNON WARNKE's correctional facilities.

13. Defendant WELLPATH MANAGEMENT, INC. is a Delaware corporation doing business in the State of California, as a contracted provider of healthcare services to Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE, and VERNON WARNKE's correctional facilities.

14. Defendant JOSHUAH JACKSON is and was, at all times material herein, employed by Defendants CALIFORNIA FORENSIC MEDICAL GROUP, INC., WELLPATH LLC, and WELLPATH MANAGEMENT, INC. in Defendant MERCED COUNTY SHERIFF'S OFFICE's correctional facilities, acting within the scope of employment and under color of state law. Defendant JOSHUAH JACKSON is sued in an individual capacity.

15. Defendant CHRISTIAN COLLAZO is and was, at all times material herein, employed by Defendants CALIFORNIA FORENSIC MEDICAL GROUP, INC., WELLPATH LLC, and WELLPATH MANAGEMENT, INC. in Defendant MERCED COUNTY SHERIFF'S OFFICE's

correctional facilities, acting within the scope of employment and under color of state law. Defendant CHRISTIAN COLLAZO is sued in an individual capacity.

16. Defendant TERESA VINCE is and was, at all times material herein, employed by Defendants CALIFORNIA FORENSIC MEDICAL GROUP, INC., WELLPATH LLC, and WELLPATH MANAGEMENT, INC. in Defendant MERCED COUNTY SHERIFF'S OFFICE's correctional facilities, acting within the scope of employment and under color of state law. Defendant TERESA VINCE is sued in an individual capacity.

17. Defendants DOE 1 to 20 are and/or were agents, contractors, or employees of Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE, CALIFORNIA FORENSIC MEDICAL GROUP, INC., WELLPATH LLC, and/or WELLPATH MANAGEMENT, INC., acting within the scope of agency or employment and under color of state law. Defendants DOE 1 to 20 are sued by their fictitious names and their true and correct names and identities will be substituted when ascertained.

## GENERAL ALLEGATIONS

18. At all times relevant herein, all wrongful acts described were performed under color of state law and/or in concert with or on behalf of those acting under the color of state law.

### Merced County Sheriff's Office

19. Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE, and VERNON WARNKE operate, supervise, and manage correctional facilities within the County of Merced, including the Merced County Main Jail and John Latorraca Correctional Facility.

20. Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE, and VERNON WARNKE are answerable for the safety and security of inmates, detainees, and prisoners in correctional facilities, pursuant to California law and Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE, and VERNON WARNKE's policies and procedures.

21. Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE, and VERNON WARNKE are responsible for the actions and/or inactions and the policies and customs of their employees and agents, including responsibilities for ensuring the provision of emergency and basic healthcare services to all inmates, detainees, and prisoners at the Merced County Main Jail and John

Latorraca Correctional Facility.

22. Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE, and VERNON WARNKE have authority to make contracts, to provide for jails and corrections, and to operate, supervise, and manage health facilities including at correctional facilities through contracts, joint ventures, or partnerships.

23. At all times relevant herein, Defendant COUNTY OF MERCED contracted with Defendants CALIFORNIA FORENSIC MEDICAL GROUP, INC., WELLPATH LLC, and/or WELLPATH MANAGEMENT, INC. to provide healthcare services to inmates, detainees, and prisoners in Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE, and VERNON WARNKE's correctional facilities.

24. Defendants CALIFORNIA FORENSIC MEDICAL GROUP, INC., WELLPATH LLC, and WELLPATH MANAGEMENT, INC. provide a governmental function and stand in the same capacity as Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE, and VERNON WARNKE when carrying out duties and providing healthcare services to inmates, detainees, and prisoners in correctional facilities.

25. Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE, and VERNON WARNKE, jointly with Defendants CALIFORNIA FORENSIC MEDICAL GROUP, INC., WELLPATH LLC, and WELLPATH MANAGEMENT, INC., are responsible for developing policies and procedures relating to healthcare services provided to inmates, detainees, and prisoners in correctional facilities, from the time that inmates, detainees, and prisoners are booked until they are released from custody.

26. Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE, and VERNON WARNKE are responsible for overseeing that Defendants CALIFORNIA FORENSIC MEDICAL GROUP, INC., WELLPATH LLC, and WELLPATH MANAGEMENT, INC.'s personnel comply with contractual duties and responsibilities to provide healthcare services to inmates, detainees, and prisoners in correctional facilities.

27. On information and belief, Defendant COUNTY OF MERCED's contract with Defendants CALIFORNIA FORENSIC MEDICAL GROUP, INC., WELLPATH LLC, and/or

WELLPATH MANAGEMENT, INC. is structed in a manner which provides financial incentive and motivation to procure deficient and inadequate healthcare services to inmates, detainees, and prisoners in correctional facilities.

**California Forensic Medical Group, Inc. / Wellpath LLC**

28. On information and belief, Defendants CALIFORNIA FORENSIC MEDICAL GROUP, INC., WELLPATH LLC, and WELLPATH MANAGEMENT, INC. were, at all times relevant herein, alter-egos of each other, including sharing money, resources, policies, practices, officers, directors, attorneys, and management, while doing business in California.

29. On information and belief, Defendant WELLPATH LLC controlled aspects of Defendant CALIFORNIA FORENSIC MEDICAL GROUP, INC.'s business, including providing policies and procedures for use in correctional facilities, human resources, hiring and supervising employees, payroll, accounting, accounts receivable, accounts payable, tax reporting, finance, liability insurance, contract negotiation and setting staffing plans, legal services, and supplies. In return, Defendant CALIFORNIA FORENSIC MEDICAL GROUP, INC. transferred millions of dollars yearly in revenues to Defendant WELLPATH LLC and other entities.

30. On information and belief, Defendant WELLPATH MANAGEMENT, INC. also controlled aspects of Defendant CALIFORNIA FORENSIC MEDICAL GROUP, INC.'s business, including policies and procedures for use at correctional facilities.

31. Defendants CALIFORNIA FORENSIC MEDICAL GROUP, INC., WELLPATH LLC, and WELLPATH MANAGEMENT, INC. provided contracted medical, mental health, and nursing care inmates, detainees, and prisoners at Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE, and VERNON WARNKE's correctional facilities, including the Merced County Main Jail and John Latorraca Correctional Facility.

32. Defendant CALIFORNIA FORENSIC MEDICAL GROUP, INC. has also been known as "Correctional Medical Group Companies, Inc." since 2013. H.I.G. Capital, LLC acquired Defendant CALIFORNIA FORENSIC MEDICAL GROUP, INC. and rebranded its name under the umbrella of Correctional Medical Group Companies, Inc. in 2013.

33. Defendant CALIFORNIA FORENSIC MEDICAL GROUP, INC. has also been known as

Defendants WELLPATH LLC and/or WELLPATH MANAGEMENT, INC. since October 1, 2018. On October 1, 2018, H.I.G. Capital, LLC announced acquisition and the joining of forces between Correctional Medical Group Companies, Inc. and Correct Care Solutions, LLC creating a partnership with management and rebranding as "Wellpath."

34. On information and belief, Defendants CALIFORNIA FORENSIC MEDICAL GROUP, INC., WELLPATH LLC, and WELLPATH MANAGEMENT, INC. are and/or were owned and controlled by H.I.G. Capital, LLC. Defendants CALIFORNIA FORENSIC MEDICAL GROUP, INC., WELLPATH LLC, and WELLPATH MANAGEMENT, INC. act on behalf of H.I.G. Capital, LLC and are and/or were responsible for the hiring, retaining, training, and supervising of the conduct, policies and practices of its employees and agents of Defendants CALIFORNIA FORENSIC MEDICAL GROUP, INC., WELLPATH LLC, and WELLPATH MANAGEMENT, INC.

35. Defendants CALIFORNIA FORENSIC MEDICAL GROUP, INC., WELLPATH LLC, and WELLPATH MANAGEMENT, INC. are corporations engaged in the practice of medicine. California law prohibits the corporate practice of medicine, and requires that healing arts practitioners have control over decisions regarding, *inter alia*, inventory, supplies, design specifications for offices, financial aspects of the practice, choice of laboratory, and treatment decisions. On information and belief, decisions required to be made by healing arts practitioners are controlled and made by corporate interests, Defendants CALIFORNIA FORENSIC MEDICAL GROUP, INC., WELLPATH LLC, and WELLPATH MANAGEMENT, INC.'s decisions focus on the profitability of its business enterprise rather than the quality of healthcare/medical services provided to inmates.

**Steven Ayala**

36. STEVEN AYALA was a 43-year-old man prior to his death on May 11, 2025. STEVEN AYALA is survived by his biological daughter, EMILY AYALA-ZIMMER.

37. STEVEN AYALA had a documented history of disability including depression, anxiety, hallucination, and suicidal ideation.

38. STEVEN AYALA was prescribed medications for his disabilities including mood stabilizers such as Remeron (Mirtazapine), Olanzapine (Zyprexa), and Atarax (hydroxyzine).

39. STEVEN AYALA's disabilities required hospitalization and treatment on occasion.

40. STEVEN AYALA's disabilities substantially limited one or more major life activities, including caring for oneself, concentrating, thinking, and working.

41. STEVEN AYALA's disability and associated symptoms were exacerbated when he became stressed and discontinued taking medications.

42. STEVEN AYALA's frequent mental health issues resulted in an extensive record of his mental health history including reported of "bizarre behavior," court findings of being incompetent to stand trial (IST), and placement in a safety cell for suicidal ideation. For example, on October 28, 2023, STEVEN AYALA was arrested and booked into the Merced County Main Jail where he reportedly "attempted to hit [his] head against the wall during intake" and "stated 'I want to die.'"

43. At all times relevant herein, STEVEN AYALA was suffering from the effects of mental health issues, including immediately prior to his death.

**Merced County Main Jail**

44. On September 9, 2024, STEVEN AYALA was arrested for minor non-violent offenses (vandalism and resisting) and booked as a pretrial detainee into the custody of Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE, and VERNON WARNKE at Merced County Main Jail. Upon intake, STEVEN AYALA presented a heightened suicide risk, including based on history and present condition.

45. Around 7:43 p.m., Heather Shepherd, a vocational nurse (LVN), reported conducting a "Receiving Screening" and that STEVEN AYALA was a "Mental Health Patient" with issues including "anxiety and depression" and "has not had medications for a while."

46. On October 1, 2024, STEVEN AYALA reportedly flooded his cell and was re-housed in an observation cell with the water turned-off.

47. On November 21, 2024, Defendant CHRISTIAN COLLAZO, a nurse (RN), reported that STEVEN AYALA stated he was "suffering from anxiety and trouble sleeping at night," he "dropped off" taking Zyprexa, and he had "anxiety with intermittent auditory hallucinations."

48. On December 4, 2024, Dylan Fulcher, a nurse (RN), reported that STEVEN AYALA stated he "Can[']t sleep" and "has some situational anxiety related to waiting for his court[-]ordered assessment."

49. On December 8, 2024, Sarah Peara, a therapist (LMFT), reported that STEVEN AYALA stated he “can’t sleep,” his “medication is not working,” and he “placed a sick call slip to switch doctors” because “his doctor never came to see him which now delays his case another month,” and “officers are too busy to help him” when he complains.

50. On January 8, 2025, Syed Rizvi, a doctor (MD), reported that STEVEN AYALA presented as “confused” and “disorganized” and “refused to be on psych meds.”

51. On January 26, 2025, Jaime Harper, a vocational nurse (LVN), reported that STEVEN AYALA stuck toilet paper inside of his ear canal which the medical staff removed.

52. On February 18, 2025, STEVEN AYALA was reportedly declared incompetent to stand trial (IST) and ordered to be admitted to the STATE OF CALIFORNIA and CALIFORNIA DEPARTMENT OF STATE HOSPITALS for restorative treatment.

53. STATE OF CALIFORNIA, CALIFORNIA DEPARTMENT OF STATE HOSPITAL, and their personnel were responsible for the admission of IST inmates to state hospital facilities, including STEVEN AYALA, pursuant to California Penal Code § 1370 *et seq*.

54. On information and belief, CALIFORNIA DEPARTMENT OF STATE HOSPITALS contracts with Defendants COUNTY OF MERCED and MERCED COUNTY SHERIFF’S OFFICE to provide legally-mandated restorative treatment services to patients at correctional facilities rather than admitting patients to CALIFORNIA DEPARTMENT OF STATE HOSPITALS’s facilities.

55. STATE OF CALIFORNIA, CALIFORNIA DEPARTMENT OF STATE HOSPITALS, and their personnel knew or should have known that Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF’S OFFICE, and VERNON WARNKE, through for-profit correctional healthcare services providers, including CALIFORNIA FORENSIC MEDICAL GROUP, INC., WELLPATH LLC, WELLPATH MANAGEMENT, INC., and DOE 1, failed to provide inmates reasonable accommodation for and exhibited deliberate indifference to serious medical needs.

56. During an Early Access and Stabilization Services (EASS) program enrollment, Arielle Tavares, a vocational nurse (LVN), reported that STEVEN AYALA stated that he was “hallucinating a lot due to being hungry” and that he was “arm wrestling” with his teacher.

\ \ \

**John Latorraca Correctional Facility**

57. On February 21, 2025, STEVEN AYALA was reportedly unenrolled and discharged by CALIFORNIA DEPARTMENT OF STATE HOSPITALS and/or Defendants COUNTY OF MERCED and MERCED COUNTY SHERIFF'S OFFICE from the EASS program and transferred to Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE, VERNON WARNKE, CALIFORNIA FORENSIC MEDICAL GROUP, INC., WELLPATH LLC, WELLPATH MANAGEMENT, INC., and DOE 1's Jail-Based Competency Training (JBCT) program and transferred to the John Latorraca Correctional Facility.

58. Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE, VERNON WARNKE, CALIFORNIA FORENSIC MEDICAL GROUP, INC., WELLPATH LLC, WELLPATH MANAGEMENT, INC., and DOE 1's Jail-Based Competency Training (JBCT) program was understaffed and incapable of providing restorative treatment mandated by California Penal Code § 1370 *et seq*.

59. STATE OF CALIFORNIA, CALIFORNIA DEPARTMENT OF STATE HOSPITAL, and their personnel failed to provide for and ensure that STEVEN AYALA received timely restorative treatment but could have done so, including by admitting STEVEN AYALA to a facility where court-ordered services were available. STATE OF CALIFORNIA, CALIFORNIA DEPARTMENT OF STATE HOSPITAL, and their personnel violated the court's order that STEVEN AYALA receive restorative treatment mandated by California Penal Code § 1370 *et seq*.

60. On February 26, 2025, the medical staff reportedly performed a JBCT competency assessment of STEVEN AYALA.

61. On March 5, 2025, Defendant JOSHUAH JACKSON, an out-of-state doctor (MD), reported conducting a remote "telehealth" meeting and that STEVEN AYALA was "detached and dysphoric," "[s]eems frustrated he's still in the [JBCT] program," "described some significant familial loss he'd been through" and the need to "distract himself from painful memories," was "[u]nder some serious stressors, resulting in a chronically low mood," and "[s]taff have commented on his sad appearance frequently." Defendant JOSHUAH JACKSON concluded "[p]sychotherapy would be most helpful here, but we're obviously limited in availability."

62. On March 18, 2025, the medical staff reported that STEVEN AYALA was "very quiet s[t]aring at the floor—soft spoken, pouty and depressed."

63. On March 19, 2025, Defendant TERESA VINCE, a therapist (LMFT), reported that STEVEN AYALA "[r]emains sad appearing" and "[p]refers to isolate and avoid socially…"

64. On March 26, 2025, Defendant JOSHUAH JACKSON reported conducting a remote "telehealth" meeting and that STEVEN AYALA was "[s]ad and dysphoric appearing…"

65. On March 28, 2025, Defendant TERESA VINCE reported that STEVEN AYALA's "[m]ood is sad…"

66. On April 2, 2025, Defendant JOSHUAH JACKSON reported conducting a remote "telehealth" meeting and that "[STEVEN AYALA] remains constricted and emotionally isolated…"

67. On April 9, 2025, Defendant TERESA VINCE reported that STEVEN AYALA stated that he "continues to struggle with depression," "[h]e talks a lot about the loss of his children," and that his "[m]ood remains depressed, facial expression is sullen, poor eye contact, speech is soft."

68. Later, on April 9, 2025, Defendant JOSHUAH JACKSON reported conducting a remote "telehealth" meeting and that "[STEVEN AYALA] remains constricted but declining further med interventions. There may be some maladaptive cognitive schemia underlying his persistent low state, thus the added unspec PD diagnosis."

69. On April 16, 2025, Defendant JOSHUAH JACKSON reported conducting a remote "telehealth" meeting and that STEVEN AYALA's "[m]ood 'the same' and affect constricted, pessimistic."

70. On April 21, 2025, Defendant TERESA VINCE reported that Deputy Gonzales relayed concerns about STEVEN AYALA, including his statements that he "needed to talk" and "kept saying over and over 'I just need a chance - I need someone to give me a chance.'" Defendant TERESA VINCE reported conducting an "Increased depression Welfare check" due to "increased depression - reports no support in the community" and STEVEN AYALA reported a "persistent feeling of sadness" based on his "losses (at 13 kicked out of the house, broken marriage, los[t] his children to CPS, lost his job, became homeless, was arrested and placed in a court ordered competency program)."

71. On April 23, 2025, Defendant JOSHUAH JACKSON reported conducting a remote

"telehealth" meeting and that STEVEN AYALA "[c]ontinues to appear sad" with "[m]ood 'the same' and affect bland, constricted, isolated."

72. On April 24, 2025, Defendant TERESA VINCE reported "concern for [STEVEN AYALA's] well being due to things he said in group, his picture and his consistent display of sadness and desperation. . . . [STEVEN AYALA] appears to be struggling with mood instability that is primarily depressive…"

73. On April 29, 2025, Carrie Mattmiller, a vocational nurse (LVN), reported "[STEVEN AYALA] appears sad but he stated that he is not sad."

74. On April 30, 2025, Defendant JOSHUAH JACKSON reported conducting a remote "telehealth" meeting and that STEVEN AYALA had "affect somber."

75. On May 1, 2025, Adanelis Morrow, a therapist (AMFT), reported conducting a competency evaluation with STEVEN AYALA.

76. On May 2, 2025, Defendant TERESA VINCE reported that STEVEN AYALA "passed his 1370 [competency] evaluation" and would receive a JBCT completion certificate on May 5, 2025.

77. On May 5, 2025, Carrie Mattmiller reported that STEVEN AYALA received a "Certificate of Completion from JBCT."

78. On May 9, 2025, Defendant CHRISTIAN COLLAZO reported that "[STEVEN AYALA] is experiencing a depressive episode with blunted affect…"

79. May 9, 2025, was the last date that STEVEN AYALA was evaluated by medical staff.

80. Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE, VERNON WARNKE, CALIFORNIA FORENSIC MEDICAL GROUP, INC., WELLPATH LLC, WELLPATH MANAGEMENT, INC., and DOE 1, including personnel and Defendants JOSHUAH JACKSON, CHRISTIAN COLLAZO, TERESA VINCE, and DOE 2 to 10, knew or should have known that STEVEN AYALA required heightened observation due to his disabilities and mental health issues but failed to provide reasonable accommodation and exhibited deliberate indifference to STEVEN AYALA's disabilities and caused him to be confined to housing where he was insufficiently monitored, observed, and supervised and which presented suicide risks, including anchor points and items from which a noose could be fashioned.

81. Defendants DOE 11 to 20, custody staff employed by Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE, and VERNON WARNKE, were responsible for supervising and monitoring STEVEN AYALA. Defendants DOE 11 to 20 had the ability to monitor STEVEN AYALA using a closed-circuit television (CCTV) surveillance system's video feed and direct-view safety checks. Defendants DOE 11 to 20 failed to conduct timely and adequate monitoring of STEVEN AYALA including by observing, intervening, and preventing STEVEN AYALA's suicide attempt.

82. On May 11, 2025, STEVEN AYALA reportedly hung himself inside of his cell using a makeshift noose fashioned and anchored from items available in his cell.

83. Around 7:42 p.m., the jail staff reportedly radioed "man down" when STEVEN AYALA was discovered hanging in his cell.

84. Around 7:44 p.m., Angelo Martinez, a nurse (RN), reported that STEVEN AYALA had been remove from his cell, was lying "supine in front of [his] cell," "[his] lips [we]re cyanotic," he was "a little warm," "[his] face and hand ha[d] pallor and [we]re becoming cyanotic," and "pupils measure[d] 7 mm, fixed, not reactive to light nor accommodating."

85. Around 8:00 p.m., ambulance personnel reportedly arrived at the jail and took-over care of STEVEN AYALA from the jail staff.

86. At 8:30 p.m., STEVEN AYALA was declared dead.

87. Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE, VERNON WARNKE, CALIFORNIA FORENSIC MEDICAL GROUP, INC., WELLPATH LLC, WELLPATH MANAGEMENT, INC., JOSHUAH JACKSON, CHRISTIAN COLLAZO, TERESA VINCE, and DOE 1 to 20 exhibited deliberate indifference to STEVEN AYALA's safety, security, and serious medical needs, where an intentional decision was made with respect to the conditions of his confinement and serious condition which put STEVEN AYALA at substantial risk of suffering serious harm, and reasonable available measures to abate those risks were not taken, including by performing a comprehensive mental health screening; performing a comprehensive classification and housing assignment; providing medical/mental health treatment; performing a comprehensive suicide risk assessment; timely and adequate monitoring and observation; obtaining informed opinions from

medical/mental health professionals; and/or recommending urgent referral to an outside provider, and a reasonable official in the circumstances would have appreciated the high degree of risk involved, observed the need for intervention and immediate medical care, and responded appropriately to STEVEN AYALA's safety risks and medical emergency, based on the documented mental health history and present conditions.

88. Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE, CALIFORNIA FORENSIC MEDICAL GROUP, INC., WELLPATH LLC, WELLPATH MANAGEMENT, INC., JOSHUAH JACKSON, CHRISTIAN COLLAZO, TERESA VINCE, and DOE 1 to 10 failed to utilize appropriate policies, training, standards, and procedures including in violation of California Penal Code § 1370 *et seq*.; California Code of Regulations title 15 § 1030 (Suicide Prevention Program), § 1055 (Use of Safety Cell), § 1207 (Medical Receiving Screening), § 1027.5 (Safety Checks), § 1208 (Access to Treatment), § 1210 (Individualized Treatment Plans), § 1211 (Sick Call), § 3365 (Suicide Prevention and Response); National Commission on Correctional Health Care (NCCHC) Standards for Health Services in Jails Standard J-A-01 (Access to Care), Standard J-B-05 (Suicide Prevention and Intervention), Standard J-C-04 (Health Training for Correctional Officers), Standard J-C-07 (Staffing), Standard J-D-08 (Hospitals and Specialty Care), Standard J-E-02 (Receiving Screening), Standard J-E-04 (Initial Health Assessment), Standard J-E-08 (Nursing Assessment Protocols and Procedures), Standard J-E-09 (Continuity, Coordination, and Quality of Care During Incarceration), Standard J-F-01 (Ongoing Care for Chronic Illness); Institute for Medical Quality (IMQ) Standard 110 (Transfer of Inmates with Acute Illness), Standard 204 (Basic Training for Correctional Personnel), Standard 302 (Receiving Screening), Standard 304 (Access to Treatment), Standard 306 (Clinic Care), Standard 307 (Health Inventory & Communicable Disease Screening), Standard 312 (Suicide Prevention), Standard 318 (Standardized Procedures/Treatment Protocols), Standard 319 (Continuity of Care), Standard 328 (Health Maintenance); American Correctional Association (ACA) Standard 4-ALDF-2A-15 (Staffing), Standard 4-ALDF-7B-10 (Training and Staff Development), Standard 4-ALDF-4C-01 (Access to Care), Standard 4-ALDF-4C-05 (Referrals), Standard 4-ADLF-4C-22 (Health Screens), Standard 4-ALDF-4C-24, 4-ALDF-4C-25 (Health Appraisal), Standard 4-ALDF-4C-32 (Suicide Prevention and Intervention), Standard 4-ALDF-4C-33 (Suicide Clothing), Standard 4-ALDF-

4C-36 (Detoxification), Standard 4-ALDF-4D-20 (Transfer), Standard 1-HC-1A-01 (Access to Care), Standard 1-HC-4A-05 (Staffing/Referrals), Standard 1-HC-4A-07 (Transfers), Standard 1-HC-1A-19 (Health Screens), Standard 1-HC-1A-22, 1-HC-1A-23 (Health Appraisal); and Wellpath Policies & Procedures Policy HCD-110_B-05 (Suicide Prevention and Intervention Program), Policy HCD-110_E-02 (Receiving Screening), Policy HCD-110_E-05 (Mental Health Screening and Evaluation), Policy HCD-110_F-03 (Mental Health Services), Policy HCD-110_G-02A (Safety Cell Placement and Retention).

89. Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE, VERNON WARNKE, and DOE 11 to 20 failed to utilize appropriate policies, training, standards, and procedures including in violation of California Code of Regulations title 15 § 1030 (Suicide Prevention Program), § 1055 (Use of Safety Cell), § 1207 (Medical Receiving Screening), § 1027.5 (Safety Checks), § 1208 (Access to Treatment), § 1210 (Individualized Treatment Plans), § 1211 (Sick Call), § 1213 (Detoxification Treatment), § 3365 (Suicide Prevention and Response); California Commission on Peace Officer Standards and Training (POST) Learning Doman 31 (Custody), Learning Domain 37 (People with Disabilities); Merced County Sheriff's Office Corrections Manual Policy 502 (Reception), Policy 505 (Special Management Incarcerated Persons), Policy 508 (Inmate Classification), Policy 710 (Medical Screening), Policy 711 (Mental Health Services), Policy 712 (Mental Health Screening and Evaluation), Policy 713 (Special Needs Medical Treatment), Policy 720 (Suicide Prevention and Intervention); and Merced County Sheriff's Office Agency Procedure Manual Procedure 519 (Safety - Sobering - Medical Observation), Procedure 700 (Suicide Prevention Considerations), Procedure 701 (Mental Health Transfers).

**POLICY / CUSTOM ALLEGATIONS**

90. Defendant VERNON WARNKE is and was a final policymaking authority as sheriff for Defendants COUNTY OF MERCED and MERCED COUNTY SHERIFF'S OFFICE, including as it relates to the maintenance and operation of jail and detention facilities; training, supervision, and discipline of staff acting under his command; and the safety and security of inmates in his custody. *See* Cal. Const. Art. XI § 1(b); Cal. Pen. Code § 4000; Cal. Pen. Code § 4006; Cal. Gov. Code § 26605; Cal. Gov. Code § 26610. Defendant VERNON WARNKE has been employed by Defendants COUNTY OF

MERCED and MERCED COUNTY SHERIFF'S OFFICE since 1979, including in supervisory and policymaking capacities since at least 1997. Defendant VERNON WARNKE has served as Sheriff since December 2014.

91. Defendant DOE 1 is the Health Services Administrator for Defendants CALIFORNIA FORENSIC MEDICAL GROUP, INC., WELLPATH LLC, and WELLPATH MANAGEMENT, INC. in Defendant MERCED COUNTY SHERIFF'S OFFICE's correctional facilities. Defendant DOE 1 is and was a final policymaking official for Defendants CALIFORNIA FORENSIC MEDICAL GROUP, INC., WELLPATH LLC, and WELLPATH MANAGEMENT, INC., including as it relates to the provision of healthcare services to inmates, detainees, and prisoners at correctional facilities; training, supervision, and discipline of staff acting under their command; and the safety and security of inmates in their care. Defendant DOE 1 is and was responsible for the provision of healthcare care to inmates, detainees, and prisoners in their care at correctional facilities, including assessment of inmates for healthcare emergencies, healthcare needs, and all policies, procedures, customs, hiring, staffing, supervision, and training related thereto.

92. Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE, VERNON WARNKE, CALIFORNIA FORENSIC MEDICAL GROUP, INC., WELLPATH LLC, and WELLPATH MANAGEMENT, INC., DOE 1, and STATE OF CALIFORNIA and CALIFORNIA DEPARTMENT OF STATE HOSPITALS, including their custody and medical staff, exhibited a pattern of deliberate indifference to the serious acute medical conditions of STEVEN AYALA. For example:

(a) The custody and medical staff failed adequately to screen, assess, classify, and assign STEVEN AYALA's housing and monitoring, including in a cell without suicide risks such as anchor points and items which could be fashioned into a noose;

(b) The custody and medical staff failed adequately to observe, inform, and notify the medical staff of STEVEN AYALA's need for immediate medical attention, including mental health assessments and services;

(c) The custody and medical staff failed adequately to provide healthcare/medical services to STEVEN AYALA; and

(d) The custody and medical staff failed adequately to arrange, secure, and execute

STEVEN AYALA's transfer to an outside facility which could provide adequate healthcare/medical services.

93. Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE, VERNON WARNKE, CALIFORNIA FORENSIC MEDICAL GROUP, INC., WELLPATH LLC, WELLPATH MANAGEMENT, INC., and DOE 1, and STATE OF CALIFORNIA and CALIFORNIA DEPARTMENT OF STATE HOSPITALS, including their custody and medical staff, maintained policies and customs of inadequate supervision and reporting relating to healthcare/medical services and treatment at Defendant MERCED COUNTY SHERIFF'S OFFICE's correctional facilities, resulting in the violation of constitutional rights of persons held in their detention facilities, including STEVEN AYALA. For example, inadequate polices, customs, training, supervision, and discipline of custody and medical staff resulted in the following deficiencies:

(a) Failure promptly to assess, identify, and recognize whether newly arrived inmates are suffering or will suffer from acute medical conditions, including suicidal ideation;

(b) Failure adequately to observe, monitor, and review inmates for possible acute medical conditions, including suicidal ideation;

(c) Failure adequately to provide jail staff with training on inmates with acute medical conditions, including suicidal ideation;

(d) Failure adequately to provide access to healthcare/medical services and treatment, continuity of care, and access to a higher level of care not available at the jail;

(e) Failure adequately to classify, house, and monitor inmates suffering from medical disabilities in compliance with statutory mandates;

(f) Failure adequately to maintain sufficient, competent, required, and contracted healthcare/medical services;

(g) Failure adequately to utilize appropriate national and local accepted minimum standards, procedures, and practices for handling inmates suffering from acute medical conditions, including suicidal ideation;

(h) Failure adequately to institute, require, and enforce proper and adequate training, supervision, policies, procedures and practices concerning inmates suffering from acute medical

conditions, including suicidal ideation;

(i) Failure adequately to comply with, enforce, and implement self-imposed policies and procedures;

(j) Failure adequately to maintain competent supervision and training of jail staff concerning inmates suffering from acute medical conditions, including suicidal ideation;

(k) Failure adequately to place inmates' safety and needs, including duties and responsibilities to provide sufficient and competent healthcare/medical services to patients/inmates, above financial interests and/or profits;

(l) Failure adequately to provide inmates with access to necessary and appropriate healthcare/medical services;

(m) Failure adequately to utilize isolation or segregation/separation housing;

(n) Failure adequately to monitor inmates in isolation or segregation/separation housing;

(o) Failure promptly to evaluate and transfer inmates to a hospital or facility providing appropriate and necessary healthcare/medical services, where an inmate presents serious medical needs;

(p) Failure adequately to implement necessary emergency treatment policies; and

(q) Failure adequately to provide necessary staffing and training at correctional facilities for the purpose of providing minimally-adequate healthcare/medical services.

94. Industry Standards: Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE, VERNON WARNKE, CALIFORNIA FORENSIC MEDICAL GROUP, INC., WELLPATH LLC, WELLPATH MANAGEMENT, INC., and DOE 1, and STATE OF CALIFORNIA and CALIFORNIA DEPARTMENT OF STATE HOSPITALS, maintain practices and customs which are inconsistent with state law, applicable industry standards, and their own policies and procedures including:

(a) California Penal Code § 1370 *et seq*.

(b) California Code of Regulations title 15 § 1030 (Suicide Prevention Program), § 1055 (Use of Safety Cell), § 1207 (Medical Receiving Screening), § 1027.5 (Safety Checks), § 1208 (Access to Treatment), § 1210 (Individualized Treatment Plans), § 1211 (Sick Call), § 1213

(Detoxification Treatment), § 3365 (Suicide Prevention and Response).

(c) California Commission on Peace Officer Standards and Training (POST) Learning Doman 31 (Custody), Learning Domain 37 (People with Disabilities); A First Responder's Guide For Persons With Mental Illness Or Developmental Disability 3-2 (Suicide), 4-2–4-4 (Suicide).

(d) National Commission on Correctional Health Care (NCCHC) Standards for Health Services in Jails Standard J-A-01 (Access to Care), Standard J-B-05 (Suicide Prevention and Intervention), Standard J-C-04 (Health Training for Correctional Officers), Standard J-C-07 (Staffing), Standard J-D-08 (Hospitals and Specialty Care), Standard J-E-02 (Receiving Screening), Standard J-E-04 (Initial Health Assessment), Standard J-E-08 (Nursing Assessment Protocols and Procedures), Standard J-E-09 (Continuity, Coordination, and Quality of Care During Incarceration), Standard J-F-01 (Ongoing Care for Chronic Illness), Standard J-F-04 (Medically Supervised Withdrawal and Treatment), Standard J-G-02 (Segregated Inmates).

(e) Institute for Medical Quality (IMQ) Standard 110 (Transfer of Inmates with Acute Illness), Standard 204 (Basic Training for Correctional Personnel), Standard 302 (Receiving Screening), Standard 303 (Substance Abuse), Standard 304 (Access to Treatment), Standard 306 (Clinic Care), Standard 307 (Health Inventory & Communicable Disease Screening), Standard 312 (Suicide Prevention), Standard 318 (Standardized Procedures/Treatment Protocols), Standard 319 (Continuity of Care), Standard 328 (Health Maintenance).

(f) American Correctional Association (ACA) Standard 4-ALDF-2A-15 (Staffing), Standard 4-ALDF-5A-04, 4-ALDF-5A-06, 4-ALDF-5A-07 (Substance Abuse Programs), Standard 4-ALDF-7B-10 (Training and Staff Development), Standard 4-ALDF-4C-01 (Access to Care), Standard 4-ALDF-4C-05 (Referrals), Standard 4-ADLF-4C-22 (Health Screens), Standard 4-ALDF-4C-24, 4-ALDF-4C-25 (Health Appraisal), Standard 4-ALDF-4C-32 (Suicide Prevention and Intervention), Standard 4-ALDF-4C-33 (Suicide Clothing), Standard 4-ALDF-4C-36 (Detoxification), Standard 4-ALDF-4C-37 (Management of Chemical Dependency), Standard 4-ALDF-4D-20 (Transfer), Standard 1-HC-1A-01 (Access to Care), Standard 1-HC-4A-05 (Staffing/Referrals), Standard 1-HC-4A-07 (Transfers), Standard 1-HC-1A-19 (Health Screens), Standard 1-HC-1A-22, 1-HC-1A-23 (Health Appraisal), Standard 1-HC-1A-33 (Detoxification), Standard 1-HC-1A-34 (Management of Chemical

Dependency).

(g) Merced County Sheriff's Office Corrections Manual Policy 502 (Reception), Policy 505 (Special Management Incarcerated Persons), Policy 508 (Inmate Classification), Policy 710 (Medical Screening), Policy 711 (Mental Health Services), Policy 712 (Mental Health Screening and Evaluation), Policy 713 (Special Needs Medical Treatment), Policy 720 (Suicide Prevention and Intervention); Merced County Sheriff's Office Agency Procedure Manual Procedure 519 (Safety - Sobering - Medical Observation), Procedure 700 (Suicide Prevention Considerations), Procedure 701 (Mental Health Transfers).

(h) Wellpath Policies & Procedures Policy HCD-110_B-05 (Suicide Prevention and Intervention Program), Policy HCD-110_E-02 (Receiving Screening), Policy HCD-110_E-05 (Mental Health Screening and Evaluation), Policy HCD-110_F-03 (Mental Health Services), Policy HCD-110_G-02A (Safety Cell Placement and Retention), Policy HCD-110_G-02 (Segregated Inmates).

(i) California Department of State Hospitals policies and procedures relating to restorative treatment and California Penal Code § 1370 *et seq*.

95. <u>Merced County Sheriff's Office</u>: Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE, VERNON WARNKE, CALIFORNIA FORENSIC MEDICAL GROUP, INC., WELLPATH LLC, WELLPATH MANAGEMENT, INC., and DOE 1 maintain inadequate policies and customs relating to the classification, housing, assignment, monitoring, and supervision of inmates and staffing, training, and supervision of jail staff, giving rise to violations of inmates' rights to adequate medical care and personal safety. For example:

(a) On March 15, 2025, a 47-year-old male inmate housed in the Merced County Main Jail reportedly died by suicide including asphyxia by hanging. Merced County Sheriff's Office Incident #2025-001. On information and belief, the inmate was inadequately classified, housed, assigned, monitored, and supervised by jail personnel, resulting in death.

(b) On November 3, 2024, 26-year-old Edward Ramos III was housed in the Merced County Main Jail in an overcrowded four-man holding cell with at least seven other inmates. Edward Ramos III was attacked and murdered by several inmates inside of the cell, over the course of approximately 10 minutes, where Edward Ramos III sustained at least 212 stab wounds. Before the

attack, the inmates placed items on the bars of the cell to obstruct the closed-circuit television (CCTV) surveillance system's view of the murder. The jail personnel observed but did not correct the items on the bars and CCTV's obstructed view of the cell. Edward Ramos III was inadequately classified, housed, assigned, monitored, and supervised by jail personnel, resulting in death. A civil rights lawsuit was filed. *Estate of Ramos v. County of Merced*, No. 1:25-cv-00056-JLT-SKO (E.D. Cal.). The case remains pending.

(c) On April 18, 2024, a 42-year-old male inmate was housed in the Merced County Main Jail reportedly died by suicide including asphyxia by hanging. Merced County Sheriff's Office Incident #2024-001. On information and belief, the inmate was inadequately classified, housed, assigned, monitored, and supervised by jail personnel, resulting in death.

(d) On November 28, 2023, Defendant VERNON WARNKE informed Defendant COUNTY OF MERCED's Board of Supervisors that Defendant MERCED COUNTY SHERIFF'S OFFICE correctional facilities are habitually understaffed including stating: "We're down 30 positions in corrections, with more putting in for other agencies. . . . Correctional officers: 30 CO vacancies down. We're 28% in staffing, out of 108 positions. . . . With our jail construction, we have closed two dormitories due to lack of staff, which is assisting in the re-model. It's just nature of the beast, we have to do it. Due to lack of staffing, correctional officers are working three 16-hour shifts a week. It's mandatory, they don't have a choice. No other agency in this county has to do that, or will do that. . . . The state of the Sheriff's Office is dire." <https://www.facebook.com/MercedSheriffOffice/videos/884305920066178/?extid=CL-UNK-UNK-UNK-IOS_GK0T-GK1C&mibextid=cr9u03>; *see also* <https://www.countyofmerced.com/3919/Board-Archive-2023>.

(e) On August 30, 2023, Defendant VERNON WARNKE and undersheriff Corey Gibson acknowledged that Defendant COUNTY OF MERCED's actions and inactions ensure that Defendant MERCED COUNTY SHERIFF'S OFFICE's correctional facilities are habitually understaffed including stating: "As you know, sheriff, we've had some struggles currently with our staffing, both in corrections and operations. Currently, we have 108 allotted positions through the county for custodial staff. And out of those 108, we currently have 33 vacancies. Even to make it worse, out of those, for

people currently employed, we have 10 that are still in training and aren't able to work line as a solo officer. So, we're still working through those struggles. . . . I'm very proud of the personnel that we do have, busting their butts. Especially our correctional staff is doing 16-hour days, three and four days a week." <https://youtu.be/1DAqNHFOKoE?si=KMwLWr6MqMxseq1k>.

(f) On May 25, 2023, 28-year-old Tomi Kartchner was housed in the John Latorraca Correctional Center and was permitted to hang herself in a jail cell. On May 19, 2023, jail staff placed Tomi Kartchner on suicide watch for express suicidal ideation and history. Less than one day later, Tomi Kartchner was removed from suicide watch and placed in a cell with the ability and lack of supervision necessary to self-harm. During a "safety check," correctional officer Colin Foutch failed to look into Tomi Kartchner's cell while she was attempting suicide. Tomi Kartchner's hanging body was not discovered until more than an hour later, during the next untimely "safety check." Tomi Kartchner was inadequately classified, housed, assigned, monitored, and supervised by jail personnel, resulting in death. Defendant VERNON WARNKE declined to impose discipline as a result of the inadequate monitoring. A civil rights lawsuit was filed. *Estate of Kartchner v. County of Merced*, No. 1:23-cv-01672-KES-SKO (E.D. Cal.). The case remains pending.

(g) On April 20, 2023, 31-year-old Derek Valentine died by overdose at the John Latorraca Correctional Center. Derek Valentine obtained and ingested fentanyl within the facility, while visible on the closed-circuit television (CCTV) surveillance system. Derek Valentine began to suffer from seizure-like symptoms. The jail personnel failed to detect Derek Valentine's medical emergency, and only learned of an immediate medical need when an inmate informed jail personnel. Derek Valentine was inadequately monitored and supervised by jail personnel, resulting in death. A civil rights lawsuit was filed. *Estate of Valentine v. County of Merced*, No. 1:23-cv-01697-JLT-SAB (E.D. Cal.). The case remains pending.

(h) On October 19, 2022, 21-year-old Jacob Apodaca was housed in the Merced County Main Jail with at least six other inmates. Jacob Apodaca was attacked and murdered by two inmates inside of the cell, over the course of approximately 10 minutes, where Jacob Apodaca sustained more than 150 stab wounds and was repeatedly stomped. The attack was visible on the closed-circuit television (CCTV) surveillance system but no jail personnel were monitoring the video feed or detected

the attack. The jail personnel, including sergeant Soto and deputy John Wibright, abandoned their posts and responsibilities to monitor and supervise inmates, including during the attack on Jacob Apodaca, to attend a jail-sanctioned briefing for jail personnel. Criminal proceedings in the subsequent murder case revealed that jail personnel routinely abandoned their posts and fail to supervise inmates for up to two hours-per-day, including in violation of California Code of Regulations title 15 § 1027.5. 46 minutes after the attack ended, Jacob Apodaca's body was discovered in the corner of the cell during a routine cell-check by jail staff. Jacob Apodaca was inadequately classified, housed, assigned, monitored, and supervised by jail personnel, resulting in death. In the subsequent in-custody death investigation/review, captain Jeff Coburn concluded: "In review of the documentation and video evidence, I was unable to identify any policy or procedure violations by Correctional staff." Merced County Sheriff's Office IA #2022-016. Defendant VERNON WARNKE ratified the findings and conclusion of the investigation. A civil rights lawsuit was filed. *Estate of Apodaca v. County of Merced*, No. 1:23-cv-00171-JLT-SAB (E.D. Cal.). The case was settled pre-trial for $2,950,000.

(i) On January 9, 2021, six inmates escaped from the Merced County Main Jail but jail personnel failed to discover that the inmates had escaped until the following day, more than eight hours after the inmates escaped. An internal investigation found a "multitude of different correctional staff members" contributed to the inmates' escape including where "head counts, security checks, and daily tasks by Correctional Officers were not being completed." "[W]hile the escape was occurring correctional staff were present in the control room playing a game" and "correctional staff were frequently in the control room playing cards, playing 'corn hole', betting on the games, exchanging money, removing their uniforms, and watching movies on the computer," rather than carrying out their duties, including monitoring inmates. Merced County Sheriff's Office IA #2021-001. Defendant VERNON WARNKE refused adequately to discipline or terminate any of the involved jail personnel.

(j) On March 23, 2019, 39-year-old Rene Snider was housed in the Merced County Main Jail and was permitted to hang herself in a jail cell. Correctional officer Adriana Castaneda failed to conduct a cell-check on jail inmates, including Rene Snider, for one hour, 22 minutes, and 33 seconds. Adriana Castaneda became "distracted" and engaged in a non-substantive conversation with a fellow correctional officer for 46 minutes, during which time Rene Snider died. Rene Snider was inadequately

classified, housed, assigned, monitored, and supervised by jail personnel, resulting in death. An internal investigation "sustained" violations of policy against Adriana Castaneda for failure timely to conduct cell-checks but refused to impose any discipline. Merced County Sheriff's Office IA #2019-004. A civil rights lawsuit was filed. *D.M. v. County of Merced*, No. 1:20-cv-00409-JLT-SAB (E.D. Cal.). The case was settled pre-trial.

(k) On August 14, 2018, Defendant VERNON WARNKE informed Defendant COUNTY OF MERCED's Board of Supervisors that, despite inadequate staffing at Defendant MERCED COUNTY SHERIFF'S OFFICE's correctional facilities: "We will make room at the inn for whoever needs it." <https://livestream.com/accounts/21193189/events/8017913/videos/178927918>; *see also* <u>ProPublica</u>, *Deadly Delays in Jail Construction Cost Lives and Dollars Across California* (July 17, 2019), available at: <https://www.propublica.org/article/deadly-delays-in-jail-construction-cost-lives-and-dollars-across-california>.

(l) On June 17, 2018, 20-year-old Fabian Cardoza was housed in the Merced County Main Jail when he was killed in the shower. Fabian Cardoza was cornered and attacked by two inmates, including Santiago Martinez. The attackers choked Fabian Cardoza to death, then carried his lifeless body back to his cell. 24 hours passed without the attack being detected by jail personnel. The following day, a jail guard went to Fabian Cardoza's cell for his court hearing and found his body. The entire attack was video-recorded on the closed-circuit television (CCTV) surveillance system but no jail personnel were monitoring the video feed or detected the attack while it was in progress or after it occurred. Fabian Cardoza was inadequately classified, housed, assigned, monitored, and supervised by jail personnel, resulting in death. "[T]he sheriff's office still has not acknowledged that the jail staff overlooked a corpse in a cell bed for more than a day. Merced County Sheriff Verne Warnke declined to answer reporters' questions for this story, but he has blamed low staffing levels for jail violence." <u>ProPublica</u>, *Deadly Delays in Jail Construction Cost Lives and Dollars Across California* (July 17, 2019), available at: <https://www.propublica.org/article/deadly-delays-in-jail-construction-cost-lives-and-dollars-across-california>; *see also* <https://www.documentcloud.org/documents/5976132-Cardoza-18-29240.html#document/p14/a499625>.

(m) On June 11, 2017, 31-year-old Aaron Bonilla was housed in the Merced County

Main Jail with at least three other inmates. Aaron Bonilla was attacked and murdered by three inmates inside of the cell, over the course of approximately 12 minutes, where Aaron Bonilla was beaten to death. The attack was not detected by jail personnel and was discovered only when other inmates alerted jail personnel. Aaron Bonilla was inadequately classified, housed, assigned, monitored, and supervised by jail personnel, resulting in death. ProPublica, *Deadly Delays in Jail Construction Cost Lives and Dollars Across California* (July 17, 2019), available at: <https://www.propublica.org/article/deadly-delays-in-jail-construction-cost-lives-and-dollars-across-california>. Defendant VERNON WARNKE admitted that the jail was understaffed including stating: "Realistically we're 10 or 12 down in our corrections." ABC 30, *Sheriff calling for better funding after Inmate dies after assault at Merced County Jail* (June 27, 2017), available at: <https://abc30.com/los-banos-inmate-merced-county-jail-dead/2156587/>. Prior to the attack, Defendant VERNON WARNKE also stated: "Our staffing levels are low, and don't think for a minute those inmates don't know it." Merced Sun-Star, *Central Valley Family of inmate beaten to death in Merced jail files $2 million lawsuit* (Mar. 14, 2018), available at: <http://www.mercedsunstar.com/news/local/central-valley/article205184219.html>. A civil rights lawsuit was filed. *Estate of Bonilla v. County of Merced*, No. 1:18-cv-00329-DAD-SKO (E.D. Cal.). The case was settled pre-trial.

(n) On September 19, 2015, 29-year-old Alejandro Vega was housed in the Merced County Main Jail when he was beaten to brain-death. Jail personnel failed to detect the attack while it was in progress. Alejandro Vega was inadequately classified, housed, assigned, monitored, and supervised by jail personnel, resulting in death. ProPublica, *Deadly Delays in Jail Construction Cost Lives and Dollars Across California* (July 17, 2019), available at: <https://www.propublica.org/article/deadly-delays-in-jail-construction-cost-lives-and-dollars-across-california>; *see also* <https://www.documentcloud.org/documents/6188401-Vega-autopsy-Merced.html>.

(o) On December 15, 2014, 27-year-old Richard Ramirez was housed in the Merced County Main Jail and was permitted to hang himself in a jail cell. Richard Ramirez was awaiting court-ordered mental health treatment at a state hospital when he was removed from a safety cell, placed in a segregated cell, and permitted to commit suicide by hanging. Richard Ramirez was inadequately

classified, housed, assigned, monitored, and supervised by jail personnel, resulting in death. A civil rights lawsuit was filed. *Atayde v. Napa State Hospital*, No. 1:16-cv-00398-KES-SAB (E.D. Cal.). The case was settled pre-trial.

96. California Forensic Medical Group, Inc. / Wellpath LLC: Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE, and VERNON WARNKE employ private for-profit companies and agents, including Defendants CALIFORNIA FORENSIC MEDICAL GROUP, INC., WELLPATH LLC, WELLPATH MANAGEMENT, INC., and DOE 1, to deliver constitutionally-mandated healthcare services to inmates, detainees, and prisoners, with knowledge that services provided are non-compliant with the contractually bargained-for services, constitutionally inadequate, and unlawful. For example:

(a) Defendants CALIFORNIA FORENSIC MEDICAL GROUP, INC., WELLPATH LLC, and WELLPATH MANAGEMENT, INC.'s contracts require that they to pay for all outside or hospital care for inmates, detainees, or prisoners up to $25,000, which creates a financial disincentive to send patients off-site for necessary and emergency care.

(b) During the year 2022, at facilities where Defendants CALIFORNIA FORENSIC MEDICAL GROUP, INC., WELLPATH LLC, and WELLPATH MANAGEMENT, INC. were contracted to provide healthcare services, approximately 155 persons committed suicide, including at least 122 hangings.

(c) By 2015, over a 10-year period, facilities contracting with Defendant CALIFORNIA FORENSIC MEDICAL GROUP, INC. had a rate of suicide 50% higher than other facilities in California, and at least three California county's grand juries had criticized Defendant CALIFORNIA FORENSIC MEDICAL GROUP, INC.'s role in inmate deaths. According to California Department of Justice records, 72 people committed suicide in the last decade while in a jail served by Defendant CALIFORNIA FORENSIC MEDICAL GROUP, INC., and the company's suicide prevention efforts have been challenged in the federal lawsuits in multiple municipalities, including Monterey, Lake, and Ventura Counties. The Sacramento Bee, *California for-profit company faces allegations of inadequate inmate care* (Jan. 17, 2015), available at: <https://amp.sacbee.com/article7249637.html>.

(d) "Wellpath provides health care in 34 of California's 56 county jail systems…" "In

multiple instances, the for-profit company has secured multimillion-dollar county contracts without facing a single competitive bid…" "Wellpath hasn't lost a single contract to provide health care in a California county jail since its 2018 founding, even when serious allegations have surfaced." Wellpath is subject to "more than 1,000 lawsuits in U.S. federal courts, filed by prisoners, their families and civil rights groups, naming the company as a defendant, and three recent investigations involving Wellpath's quality of care by the U.S. Department of Justice." There exist "four FBI investigations — three into the company's health care delivery and one into bribery allegations involving Gerard 'Jerry' Boyle, the founder of one of the two companies that merged to become Wellpath and who pleaded guilty to conspiracy to commit mail fraud." "In San Luis Obispo County, the Justice Department concluded that Wellpath did not provide a 'significant' improvement over a jail's former government-run system after the company's takeover in February 2019 — a system whose deficient care had prompted the investigation." "In a 2020 probe into the Massachusetts Department of Corrections, the DOJ found Wellpath's mental health care was so abysmal that it may have violated the U.S. Constitution's protections against 'cruel and unusual punishment,' with 'vague' policies that increased the risk of self-harm and suicide among mentally ill prisoners" and "[a] follow-up report [in 2023] revealed that Wellpath had low staffing levels and high rates of unlicensed mental health providers." "[Another] investigation focused on Correct Care Solutions, which became Wellpath in 2018 after merging with California Forensic Medical Group," where "[i]nvestigators found that the company failed to develop a quality-control plan and overbilled the state for its medical services in a Florida prison. The Federal Bureau of Prisons, which had awarded the contract to CCS, agreed with the DOJ's recommendations on how it could better monitor the company's performance." "A 2020 Reuters investigation of large jails found that patients at institutions using Wellpath and other private providers died at higher rates than at jails with public health care. The investigation found that from 2016 to 2018, for every 10,000 inmates in Wellpath's care, 16 died; in publicly run jails, that rate was 13 per 10,000." "[Wellpath] routinely fails to adequately staff California county jails with qualified nurses and doctors, meaning that sick patients often must wait weeks — or, in emergency situations, crucial minutes or hours — to be treated." "In Yuba County, attorneys appointed by the local Superior Court to monitor the jail's compliance with a decades-old settlement agreement alleging poor conditions found that Wellpath consistently failed to staff enough

nurses and therapists to abide by the settlement's terms in both 2020 and 2021." "At the Sonoma County Jail, the National Union of Healthcare Workers, a group that represents many Wellpath nurses in California, sent a report to the Sonoma County Board of Supervisors finding that from December 2021 through March 2022, the jail staffed less than two-thirds of the nurse-hours that were required by their contract. The staffing levels in the jail were so low last March, the union's report found, that for every 500 prisoners in the Sonoma system, just one registered nurse was on duty at any given time." "Three of the five [former Wellpath employees questioned] said they were often responsible for a number of patients that felt unsafe or impossible to manage," including one former nurse stating: "I don't feel safe with 600 patients. That's not an OK ratio. Nowhere in the world is that an OK ratio." San Francisco Chronicle, *Its patients are 'literally a captive market.' Is this California health care giant failing them?* (July 25, 2023), available at: <https://www.sfchronicle.com/california/article/wellpath-health-care-jails-17917489.php>.

(e) Defendant WELLPATH LLC "has been sued nearly 500 times over the last five years across the country, according to an online review of lawsuits." KTVU FOX 2, Brooks Jarosz , Lisa Fernandez & Simone Aponte, *Santa Rita Jail's medical provider is target of lawsuits, complaints about lack of care* (May 5, 2021), available at: <https://www.ktvu.com/news/santa-rita-jails-medical-provider-is-target-of-lawsuits-complaints-about-lack-of-care>.

(f) In 2015, Defendant CALIFORNIA FORENSIC MEDICAL GROUP, INC. entered into a class action settlement which required it to address issues of inadequate healthcare, inadequate staffing, and accommodations for disabled prisoners and serious safety problems at the Monterey County Jail. *Hernandez v. County of Monterey*, No. 5:13-cv-02354-BLF, ECF No. 485 (N.D. Cal. May 15, 2015). Defendant CALIFORNIA FORENSIC MEDICAL GROUP, INC. failed completely to comply with the terms of the settlement, and the court issued an order compelling its compliance. *Id*. ECF No. 617 (N.D. Cal. Nov. 1, 2017).

(g) In August 2021, the Civil Rights Division and the United States Attorney's Office for the Central District of California completed an investigation into the conditions of confinement at the San Luis Obispo County Jail, where medical and mental health services were operated by Defendant CALIFORNIA FORENSIC MEDICAL GROUP, INC. since February 2019. Therein, the investigative

report concluded, *inter alia*: "Wellpath and its staff appear not to take seriously prisoner grievances or the grievance process as a mechanism for prisoners to raise legitimate medical concerns"; "Wellpath fails to provide adequate staffing to prevent delays in medical care that place prisoners at substantial risk of serious harm"; "[t]he Jail provided no evidence that Wellpath has corrected these deficiencies" related to failure to "conduct critical incident reviews, and when prisoners died, death reviews … includ[ing] a meaningful analysis into causal factors or systemic issues"; "Wellpath does not routinely analyze the quality of care that it provides"; and "Wellpath in fact seems to discourage routine follow-up mental health care." <https://www.justice.gov/opa/press-release/file/1429076/download?utm_medium=email&utm_source=govdelivery>.

(h) "HIG Capital's California Forensic Medical Group (CFMG), now part of Wellpath, and its clients have agreed to pay out millions of dollars in settlements to families of incarcerated people who have alleged negligence in the care the company provided." Private Equity Stakeholder Project, *HIG Capital's and Wellpath's Correctional Healthcare Investment Risks* (July 2019), available at: <https://pestakeholder.org/wp-content/uploads/2019/07/HIG-Capitals-Correctional-Healthcare-Investment-Risks-PESP-070819.pdf>.

(i) "Analysis of California department of justice data by Fairwarning found that about 200 inmates died under the care of California Forensic Medical Group (CFMG), the Californian arm of the [Correctional Medical Group Companies], between 2004 and 2014. Excluding homicide, it works out at a death rate of 1.7 per 1,000 inmates at CFMG jails compared with 1.5 in other jails." Todd Murphy, a director of business development for Correctional Medical Group Companies, stated that "the main reason counties are choosing to outsource their jail healthcare is not to reduce daily costs, but for the comfort of knowing that a lawsuit brought by the family of a dead inmate would be brought against the company and not the county. 'We provide a full partnership to our county partners,' he said. 'But the biggest thing we do is indemnify the county against risk and reliability, do everything we can to keep them out of trouble.'" Rupert Neate, *Welcome to Jail Inc: how private companies make money off US prisons* (June 16, 2016), available at: <https://www.theguardian.com/us-news/2016/jun/16/us-prisons-jail-private-healthcare-companies-profit>.

(j) Defendant CALIFORNIA FORENSIC MEDICAL GROUP, INC. is subject to,

and fails to comply with, a consent decree based on services in the County of Alameda's correctional facilities. *Babu v. Ahern*, No. 5:18-cv-07677-NC, ECF No. 436 (N.D. Cal. Feb. 7, 2022). *See* <https://rbgg.com/santa-rita-consent-decree/>; <http://grandjury.acgov.org/grandjury-assets/docs/2021-2022/Grand.Jury.Report.2022.for.ITD.Web.pdf>; KQED, *Grand Jury: Major Health and Safety Violations at Santa Rita Jail Require 'Urgent Attention'* (June 30, 2022), available at: <https://www.kqed.org/news/11918230/grand-jury-major-health-and-safety-violations-at-santa-rita-jail-require-urgent-attention>. Specifically, Defendant CALIFORNIA FORENSIC MEDICAL GROUP, INC.'s care at the County of Alameda's correctional facilities has resulted in more than 45 deaths, including 19 suicides. *See*, *e.g.*, NBC Bay Area, *Feds Say Santa Rita Jail Violates Rights of Mentally Ill* (April 24, 2021), available at: <https://www.nbcbayarea.com/news/local/east-bay/feds-say-santa-rita-jail-violates-rights-of-mentally-ill/2527370/>; KTVU FOX 2, *DOJ finds mental health care, overuse of isolation at Santa Rita Jail unconstitutional* (April 22, 2021), available at: <https://www.ktvu.com/news/doj-finds-mental-health-care-overuse-of-isolation-at-santa-rita-jail-unconstitutional>; KTVU FOX 2, *A look at the 45 inmates who have died at Santa Rita Jail in the last five years* (Oct. 4, 2019, *updated* Jan. 17, 2020), available at: <https://www.ktvu.com/news/a-look-at-the-45-inmates-who-have-died-at-santa-rita-jail-in-the-last-five-years>.

(k) In August 2023, Defendant CALIFORNIA FORENSIC MEDICAL GROUP, INC. and the County of MERCED paid $2,000,000 to settle a federal civil rights lawsuit involving the suicide of a 37-year-old man at a county jail. *Estate of Brown v. County of MERCED*, No. 3:22-cv-05457-VC (N.D. Cal.).

(l) Defendant CALIFORNIA FORENSIC MEDICAL GROUP, INC.'s care at the County of Solano's correctional facilities has resulted in at least four suicides in less than 10 years. Vallejo Sun, Scott Morris, *2022 was deadliest year in Solano County jails in 24 years* (Dec. 19, 2022), available at: <https://www.vallejosun.com/2022-was-deadliest-year-in-solano-county-jails-in-24-years/>. Specifically, in-custody deaths include: Douglas Tuttle (died December 2, 2014); Jeremiah Conaway (died April 10, 2019), *LeMoon v. Cal. Forensic Med. Grp.*, No. 4:20-cv-02552-PJH (N.D. Cal.); Salvador Romero (died September 4, 2022), *Estate of Romero v. County of Solano*, No. 2:23-cv-00523-JAM-AC (E.D. Cal.); and Kurt DeSilva (died January 23, 2023).

(m) In August 2018, Defendant CALIFORNIA FORENSIC MEDICAL GROUP, INC. and the County of MERCED paid $1,050,000 to settle a federal civil rights lawsuit involving the suicide of a 34-year-old man at a county jail. Mountain Democrat, *Spies family awarded more than $1 million for wrongful death* (Aug. 31, 2018), available at: <https://www.mtdemocrat.com/news/spies-family-awarded-more-than-1-million-for-wrongful-death/>.

(n) In June 2018, Defendant CALIFORNIA FORENSIC MEDICAL GROUP, INC. and the County of Lake paid $2,000,000 to settle a federal civil rights lawsuit involving the suicide of an 86-year-old woman at a county jail. The case revealed the "jail's medical services provider was in violation of state regulations" and Defendant CALIFORNIA FORENSIC MEDICAL GROUP, INC. utilized "lesser trained vocational nurses to make key medical and mental health decisions for prisoners." The Press Democrat, *Lake County settles jail suicide case for $2 million* (June 18, 2018), available at: <https://www.pressdemocrat.com/article/news/lake-county-settles-jail-suicide-case-for-2-million/?sba=AAS>.

(o) In 2013–2014, the Santa Cruz County Grand Jury addressed multiple deaths in the county jail where Defendant CALIFORNIA FORENSIC MEDICAL GROUP, INC. was contracted to provide healthcare services. The investigation reviewed five in-custody deaths between August 2012 and July 2013, including two suicides by hanging and four deaths at the jail. Each of the persons who died in-custody had medical problems, mental health problems, or both. In each death case, the report identified failures at critical points in the process, sometimes finding that persons were incorrectly classified, not properly monitored, or inadequately treated by Defendant CALIFORNIA FORENSIC MEDICAL GROUP, INC. <https://www.co.santa-cruz.ca.us/Portals/0/County/GrandJury/GJ2014_final/2013-2014_SantaCruzCountyGrandJuryFinalReport_complete.pdf>.

(p) In August 2015, Pierce County, Washington, cancelled its contract with Defendant WELLPATH LLC. The next month, Pierce County's Prosecuting Attorney sent Defendant WELLPATH LLC a letter in response to a demand for payment. In that letter, the Prosecuting Attorney laid out the "many areas in which [Wellpath] was in default," providing the following list: failure to verify medications at booking; delays in care; poor quality of care; poor record keeping at every level; failure to triage; lag times in getting reports to providers; continued staff shortages and almost weekly turnover;

constant lack of leadership; lack of trained personnel; unscheduled shifts; failure to provide basic services; failure to timely review or address inmate requests for medical services; significant pharmacy problems; inmates not getting their medications; staff failure to keep medical records on patients; and many others. The letter continued, "Indeed, the only things [Wellpath] can fault the County for are (1) believing [Wellpath] when they made assurances that they would implement measures to bring their operation of the clinic up to medical standards and (2) giving [Wellpath] time to accomplish it." The letter explained that "[a] lawsuit against Pierce County would flush out [Wellpath's] deplorable performance in running the medical clinic, which would not only result in considerable cost and embarrassment to [Wellpath], but would also provide evidence to support claims filed by other institutions who suffered the same disappointment as Pierce County." The letter noted that the County "compiled independent, detailed documentation of countless errors by [Wellpath] staff that "will shock the conscience of the court." The letter concluded by stating that "[a] jury would likely find that [Wellpath's] operation of the jail medical clinic was incompetent, unprofessional and morally reprehensible." In March 2019, a jury found that Defendant WELLPATH LLC had violated its contract with Pierce County and ordered it to pay the County $1,560,000.

(q) In January 2016, Dillon Blodgett committed suicide at the detention facility in Montrose County, Colorado. Blodgett had been placed in solitary confinement and had reported suicidal ideations and a previous suicide attempt. Defendant WELLPATH LLC was responsible for providing medical and mental health care at the Montrose County facility but failed adequately to do so. In November 2017, Blodgett's estate sued Defendant WELLPATH LLC, alleging its long history of inadequate medical and mental health care provided in Colorado and across the country.

(r) In March 2016, sheriff Terry Box of the Collin County (Texas) Sheriff's Office wrote that, when Defendant WELLPATH LLC was providing the medical and mental health care at his jail, "we had a list of 80 inmates waiting to see the psychiatrist." With a new provider, which is not Defendant WELLPATH LLC, he wrote that "[n]ow we don't have a waiting list. Most inmates are seen within 48 to 72 hours and sometimes the same day as the request or referral is made."

(s) In August 2017, Teresa Nall twice attempted suicide in the Kitsap County (Washington) Jail. After her first suicide attempt, Nall was placed in a solitary crisis cell for a brief

period. Shortly after a counselor released her from that cell, Nall attempted suicide again and suffered serious permanent injuries. Nall did not see a psychiatrist, psychologist, or medical doctor after her first suicide attempt. Defendant WELLPATH LLC was responsible for providing medical and mental health care at the Kitsap County facility but failed adequately to do so.

(t) In September 2017, Jesses Binam hung himself in the Mesa County (Colorado) Detention Center. Binam died from his injuries after being transferred to a local hospital. During his week in custody, Binam made suicide statements and required medication and treatment for serious mental illness. He was taken off suicide watch and moved to administrative segregation because of his behavior. He then hung himself in the segregation cell. Defendant WELLPATH LLC was responsible for providing medical and mental health care at the facility but failed adequately to do so.

(u) In October 2017, Fulton County (Georgia) notified Defendant WELLPATH LLC that it was terminating for cause its services contract to provide medical services for inmates at the Fulton County Jail. The termination letter described a series of uncured deficiencies and noted that "most seriously, the Fulton County Sheriff's Office has reported five deaths at the Fulton County Jail in the last seventy-five days . . . ."

(v) In November 2017, Sheriff Gary Simpson of the Kitsap County (Washington) Sheriff's Office sent a letter to Defendant WELLPATH LLC detailing several problems with the medical services being provided. Sheriff Simpson wrote, "In light of recent events and questions I have been asking our staff, I am finding the more I learn, the more questions arise regarding our partnership and relationship with [Wellpath]." The problems included staffing issues, questions about the "veracity and ability to effectively supervise and manage staff" of the health services administrator, and Defendant WELLPATH LLC's failure to perform initial health assessments in a timely fashion.

(w) In January 2018, Brian Roundtree died by suicide at the Arapahoe County (Colorado) Detention Facility. Roundtree was suffering from severe mental illness and initially was placed on suicide watch when he was booked into the jail. Less than 24 hours later, he was removed from suicide watch by a counselor. He never saw a psychiatrist, a psychologist, or a medical doctor. He died of suicide later that day. Defendant WELLPATH LLC was responsible for providing medical and mental health care at this facility but failed adequately to do so.

(x) In May 2018, commander Mike Anderson of the Clark County (Washington) Sheriff's Office sent a letter to Defendant WELLPATH LLC. Anderson noted that "[Wellpath] has always referred to Clark County as their flag ship on the west coast. During our discussion I communicated to you that your flag ship was taking on water and in danger of sinking. This is directly related to [Wellpath]'s inability to staff and provide mental health services from 1/12/18 as required by the contract." Anderson described problems staffing mental health positions for several months, along with a lengthy waiting list of people who needed to see a mental health professional. He concluded: "It is painfully obvious that there is disconnect somewhere in the communication process at the corporate level or other levels of management within [Wellpath]. I would like to know what your plan is to rectify this situation."

(y) In July 2018, Janelle Butterfield was booked into the Josephine County (Oregon) Jail. Butterfield had a history of severe mental illness that was known to the staff at the jail, including to its medical and mental health providers. During her 40 days in custody, Butterfield did not see a single doctor, nurse practitioner, physician's assistant, or nurse employed by the medical or mental health providers. She was placed in a segregation unit and checked once a day by persons with an EMT licenses. Herantipsychotic medication was discontinued without explanation after 16 days in custody. After 40 days, she died by suicide in her segregation cell. Defendant WELLPATH LLC was responsible for providing medical and mental health care at this facility but failed adequately to do so.

(z) In March 2021, Carlos Patino Regalado died by suicide at the Monterey County (California) Jail. Regalado had been in custody for about a month and had been on and off suicide watch several times, sometimes for expressing suicidal thoughts, other times because of actual suicide attempts. Earlier on the day he hung himself, Regalado had been on a suicide watch because he had just returned from the hospital following a "psychiatric emergency." The watch was discontinued, and he was placed in an isolation cell that contained a number of hanging points. Defendant WELLPATH LLC was responsible for providing medical and mental health care at this facility but failed adequately to do so.

(aa) In April 2022, Carlos Chavez died by apparent suicide at the Monterey County (California) Jail. Chavez had been on suicide watch; after being removed from the watch, he died less than a day later. Defendant WELLPATH LLC was responsible for providing medical and mental health

care at this facility but failed adequately to do so.

97. California Department of State Hospitals: STATE OF CALIFORNIA and CALIFORNIA DEPARTMENT STATE HOSPITALS employ Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE, and VERNON WARNKE to deliver constitutionally-mandated healthcare services to inmates, detainees, and prisoners, with knowledge that services provided constitutionally inadequate and unlawful. STATE OF CALIFORNIA and CALIFORNIA DEPARTMENT OF STATE HOSPITALS deficient policies and customs are evidenced by numerous documented instances of unlawful and unconstitutional delays in state hospital admission, including:

(a) *People v. Brewer*, No. 13F03215 (Sacramento Cnty. Super. Ct.); *see* 235 Cal. App. 4th 122 (Cal. Ct. App. 2015) (court order requiring transfer of IST inmates to state hospital within 14 days of order of commitment established the outer limit of a reasonable time for transfer and did not violate separation of powers).

(b) *In re Loveton*, Nos. 5-140055-5 et al. (Contra Costa Cnty. Super. Ct.); *see* 244 Cal. App. 4th 1025 (Cal. Ct. App. 2016) (court order requiring admission of IST inmates to state hospital within 60 days of order of commitment was reasonable)

(c) *People v. Kareem A.*, No. ZM031353 et al. (Los Angeles Cnty. Super. Ct.); *see* 46 Cal. App. 5th 58 (Cal. Ct. App. 2020) (in consolidated cases of 247 IST inmates, court order requiring admission of IST inmates to state hospital within 30 days of order of commitment was reasonable).

(d) *Stiavetti v. Ahlin*, No. RG15779731 (Cal. Super. Alameda); *see*, *sub nom.*, *Stiavetti v. Clendenin*, 65 Cal. App. 5th 691 (Cal. Ct. App. 2021) (California Department of State Hospitals systematically violated the due process rights of all persons in California who had been found IST under California Penal Code §§ 1370, 1370.1, because it failed to commence substantive services designed to return those defendants to competency within 28 days of service of the transfer of responsibility document).

(e) *Cravotta v. County of Sacramento*, No. 2:22-cv-00167-DJC-AC (E.D. Cal.) (untimely transfer of inmate to state hospital resulting in inmate's permanent brain injury when he was attacked by his cellmate).

(f) *Luong v. Alameda County*, No. 3:17-cv-06675-EMC (N.D. Cal.) (untimely transfer

of inmate to state hospital resulting in death of inmate when he was attacked by his cellmate).

(g) *Scott v. Cal. Forensic Med. Grp.*, No. 2:16-cv-03084-DSF-RAO (C.D. Cal.) (certified class of "200–300 damages class members" who alleged "lengthy and unjustified delays in providing restorative psychiatric treatment to criminal defendants who have been declared Incompetent to Stand Trial ('ISTs')").

(h) *Atayde v. Napa State Hosp.*, No. 1:16-cv-00398-DAD-SAB (E.D. Cal.) (untimely transfer of inmate to state hospital resulting in death of inmate when he committed suicide).

(i) *Anderson v. County of Siskiyou*, No. 4:10-cv-01428-SBA (N.D. Cal.) (untimely transfer of inmate to state hospital resulting in death of inmate when he committed suicide).

98. Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE, VERNON WARNKE, CALIFORNIA FORENSIC MEDICAL GROUP, INC., WELLPATH LLC, WELLPATH MANAGEMENT, INC., and DOE 1 and STATE OF CALIFORNIA and CALIFORNIA DEPARTMENT STATE HOSPITALS do not meaningfully discipline, re-train, correct, or otherwise penalize personnel involved in critical incidents where preventable deaths and injuries are sustained by inmates, including those incidents described above. Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE, VERNON WARNKE, CALIFORNIA FORENSIC MEDICAL GROUP, INC., WELLPATH LLC, WELLPATH MANAGEMENT, INC., and DOE 1's failure to correct the inadequate policies, customs, and practices described above, as evidenced by the preventable deaths and injuries sustained by inmates, contributed to STEVEN AYALA's injuries and death.

99. Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE, VERNON WARNKE, CALIFORNIA FORENSIC MEDICAL GROUP, INC., WELLPATH LLC, WELLPATH MANAGEMENT, INC., and DOE 1 and STATE OF CALIFORNIA and CALIFORNIA DEPARTMENT STATE HOSPITALS were or should have been on notice regarding the need to discontinue, modify, or implement new and different versions of the deficient policies or customs because the inadequacies and deficiencies were so obvious and likely to result in the violation of rights of persons including STEVEN AYALA.

100. Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE, VERNON WARNKE, CALIFORNIA FORENSIC MEDICAL GROUP, INC., WELLPATH LLC,

WELLPATH MANAGEMENT, INC., and DOE 1 and STATE OF CALIFORNIA and CALIFORNIA DEPARTMENT STATE HOSPITALS's inadequate policies, customs, training, supervision, and control of personnel and inmates were a moving force behind and contributed to the injuries and death of STEVEN AYALA.

**FIRST CLAIM**

**Deliberate Indifference**

**(U.S. Const. Amend. XIV; 42 U.S.C. § 1983)**

101. Plaintiff ESTATE OF STEVEN AYALA (pursuant to California Code of Civil Procedure § 377.30) asserts this Claim against Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE, VERNON WARNKE, CALIFORNIA FORENSIC MEDICAL GROUP, INC., WELLPATH LLC, WELLPATH MANAGEMENT, INC., JOSHUAH JACKSON, CHRISTIAN COLLAZO, TERESA VINCE, and DOE 1 to 20.

102. Plaintiff ESTATE OF STEVEN AYALA realleges and incorporates the allegations of the preceding paragraphs 1 to 100, to the extent relevant and as if fully set forth in this Claim.

103. *Individual Liability*: Defendants JOSHUAH JACKSON, CHRISTIAN COLLAZO, TERESA VINCE, and DOE 2 to 20 inadequately screened, classified, assigned, housed, monitored, and/or responded to STEVEN AYALA based on an immediate medical need, putting him at substantial risk of suffering serious harm, without taking reasonable available measures to abate that risk, where a reasonable official in the circumstances would have appreciated the high degree of risk involved, in violation of the Fourteenth Amendment to the United States Constitution.

104. *Municipal / Supervisory Liability*: Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE, VERNON WARNKE, CALIFORNIA FORENSIC MEDICAL GROUP, INC., WELLPATH LLC, WELLPATH MANAGEMENT, INC., and DOE 1 maintained policies or customs of action and inaction resulting in harm to STEVEN AYALA, in violation of the Fourteenth Amendment to the United States Constitution.

105. Defendants VERNON WARNKE, JOSHUAH JACKSON, CHRISTIAN COLLAZO, TERESA VINCE, and DOE 1 to 20's actions and inactions were motivated by evil motive or intent, involved reckless or callous indifference to constitutional rights, or were wantonly or oppressively done.

106. STEVEN AYALA was injured as a direct and proximate result of Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE, VERNON WARNKE, CALIFORNIA FORENSIC MEDICAL GROUP, INC., WELLPATH LLC, WELLPATH MANAGEMENT, INC., JOSHUAH JACKSON, CHRISTIAN COLLAZO, TERESA VINCE, and DOE 1 to 20 and STATE OF CALIFORNIA and CALIFORNIA DEPARTMENT OF STATE HOSPITALS's actions and inactions, entitling Plaintiff ESTATE OF STEVEN AYALA to receive compensatory (survival) and nominal damages against Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE, VERNON WARNKE, CALIFORNIA FORENSIC MEDICAL GROUP, INC., WELLPATH LLC, WELLPATH MANAGEMENT, INC., JOSHUAH JACKSON, CHRISTIAN COLLAZO, TERESA VINCE, and DOE 1 to 20; and punitive damages against Defendants VERNON WARNKE, JOSHUAH JACKSON, CHRISTIAN COLLAZO, TERESA VINCE, and DOE 1 to 20.

WHEREFORE, Plaintiff ESTATE OF STEVEN AYALA prays for relief as hereunder appears.

## SECOND CLAIM

**Title II of the Americans with Disabilities Act**

**(42 U.S.C. § 12101, *et seq*.)**

107. Plaintiff ESTATE OF STEVEN AYALA (pursuant to California Code of Civil Procedure § 377.30) asserts this Claim against Defendants COUNTY OF MERCED and MERCED COUNTY SHERIFF'S OFFICE.

108. Plaintiff ESTATE OF STEVEN AYALA realleges and incorporates the allegations of the preceding paragraphs 1 to 100, to the extent relevant and as if fully set forth in this Claim.

109. Defendants COUNTY OF MERCED and MERCED COUNTY SHERIFF'S OFFICE qualify as a "public entity" within the meaning of 42 U.S.C. § 12131(1)(A) and 28 C.F.R. § 35.104. STEVEN AYALA had an impairment that substantially limited one or more major life activities and had a record of such an impairment.

110. *Vicarious Liability*: Defendants JOSHUAH JACKSON, CHRISTIAN COLLAZO, TERESA VINCE, and DOE 2 to 20 failed reasonably to accommodate STEVEN AYALA's disability, where they could have provided a reasonable accommodation, including by performing a comprehensive mental health screening; performing a comprehensive classification and housing assignment; providing

medical/mental health treatment; performing a comprehensive suicide risk assessment; timely and adequate monitoring and observation; obtaining informed opinions from medical/mental health professionals; and/or recommending urgent referral to an outside provider, with deliberate indifference or reckless disregard to rights protected by the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq*.

111. *Municipal / Vicarious Liability*: Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE, VERNON WARNKE, CALIFORNIA FORENSIC MEDICAL GROUP, INC., WELLPATH LLC, WELLPATH MANAGEMENT, INC., and DOE 1 maintained policies or customs of action and inaction resulting in harm to STEVEN AYALA, with deliberate indifference or reckless disregard to rights protected by the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq*.

112. Plaintiff STEVEN AYALA was injured as a direct and proximate result of Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE, VERNON WARNKE, CALIFORNIA FORENSIC MEDICAL GROUP, INC., WELLPATH LLC, WELLPATH MANAGEMENT, INC., JOSHUAH JACKSON, CHRISTIAN COLLAZO, TERESA VINCE, and DOE 1 to 20 and STATE OF CALIFORNIA and CALIFORNIA DEPARTMENT OF STATE HOSPITALS's actions and inactions, entitling Plaintiff ESTATE OF STEVEN AYALA to receive compensatory (survival) and nominal damages against Defendants COUNTY OF MERCED and MERCED COUNTY SHERIFF'S OFFICE.

WHEREFORE, Plaintiff ESTATE OF STEVEN AYALA prays for relief as hereunder appears.

**THIRD CLAIM**

**§ 504 of the Rehabilitation Act**

**(29 U.S.C. § 701, *et seq*.)**

113. Plaintiff ESTATE OF STEVEN AYALA (pursuant to California Code of Civil Procedure § 377.30) asserts this Claim against Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE, CALIFORNIA FORENSIC MEDICAL GROUP, INC., WELLPATH LLC, and WELLPATH MANAGEMENT, INC.

114. Plaintiff ESTATE OF STEVEN AYALA realleges and incorporates the allegations of the preceding paragraphs 1 to 100, to the extent relevant and as if fully set forth in this Claim.

115. Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE, CALIFORNIA FORENSIC MEDICAL GROUP, INC., WELLPATH LLC, and WELLPATH MANAGEMENT, INC. receive federal financial assistance. STEVEN AYALA had an impairment that substantially limited one or more major life activities and had a record of such an impairment.

116. *Vicarious Liability*: Defendants JOSHUAH JACKSON, CHRISTIAN COLLAZO, TERESA VINCE, and DOE 2 to 20 failed reasonably to accommodate STEVEN AYALA's disability, where they could have provided a reasonable accommodation, including by performing a comprehensive mental health screening; performing a comprehensive classification and housing assignment; providing medical/mental health treatment; performing a comprehensive suicide risk assessment; timely and adequate monitoring and observation; obtaining informed opinions from medical/mental health professionals; and/or recommending urgent referral to an outside provider, with deliberate indifference or reckless disregard to rights protected by the Rehabilitation Act, 29 U.S.C. § 794, *et seq*.

117. *Municipal / Vicarious Liability*: Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE, VERNON WARNKE, CALIFORNIA FORENSIC MEDICAL GROUP, INC., WELLPATH LLC, WELLPATH MANAGEMENT, INC., and DOE 1 maintained policies or customs of action and inaction resulting in harm to STEVEN AYALA, with deliberate indifference or reckless disregard to rights protected by the Rehabilitation Act, 29 U.S.C. § 794, *et seq*.

118. Plaintiff STEVEN AYALA was injured as a direct and proximate result of Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE, VERNON WARNKE, CALIFORNIA FORENSIC MEDICAL GROUP, INC., WELLPATH LLC, WELLPATH MANAGEMENT, INC., JOSHUAH JACKSON, CHRISTIAN COLLAZO, TERESA VINCE, and DOE 1 to 20 and STATE OF CALIFORNIA and CALIFORNIA DEPARTMENT OF STATE HOSPITALS's actions and inactions, entitling Plaintiff ESTATE OF STEVEN AYALA to receive compensatory (survival) and nominal damages against Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE, CALIFORNIA FORENSIC MEDICAL GROUP, INC., WELLPATH LLC, and WELLPATH MANAGEMENT, INC.

WHEREFORE, Plaintiff ESTATE OF STEVEN AYALA prays for relief as hereunder appears.

\ \ \

**FOURTH CLAIM**

**Unwarranted Interference with Familial Association**

**(U.S. Const. Amend. XIV; 42 U.S.C. § 1983)**

119. Plaintiff EMILY AYALA-ZIMMER asserts this Claim against Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE, VERNON WARNKE, CALIFORNIA FORENSIC MEDICAL GROUP, INC., WELLPATH LLC, WELLPATH MANAGEMENT, INC., JOSHUAH JACKSON, CHRISTIAN COLLAZO, TERESA VINCE, and DOE 1 to 20.

120. Plaintiff EMILY AYALA-ZIMMER realleges and incorporates the allegations of the preceding paragraphs 1 to 100, to the extent relevant and as if fully set forth in this Claim.

121. Plaintiff EMILY AYALA-ZIMMER shared a close relationship and special bond with STEVEN AYALA, which included deep attachments, commitments, and distinctively personal aspects of their lives and was typical of a loving parent-child relationship. Plaintiff EMILY AYALA-ZIMMER frequently visited or spoke with STEVEN AYALA.

122. *Individual / Municipal / Supervisory Liability*: Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE, VERNON WARNKE, CALIFORNIA FORENSIC MEDICAL GROUP, INC., WELLPATH LLC, WELLPATH MANAGEMENT, INC., JOSHUAH JACKSON, CHRISTIAN COLLAZO, TERESA VINCE, and DOE 1 to 20 caused the unwarranted interference with, and premature termination of, Plaintiff EMILY AYALA-ZIMMER's familial association with STEVEN AYALA, in the violation of the Fourteenth Amendment to the United States Constitution.

123. Defendants VERNON WARNKE, JOSHUAH JACKSON, CHRISTIAN COLLAZO, TERESA VINCE, and DOE 1 to 20's actions and inactions were motivated by evil motive or intent, involved reckless or callous indifference to constitutional rights, or were wantonly or oppressively done.

124. Plaintiff EMILY AYALA-ZIMMER was injured as a direct and proximate result of Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE, VERNON WARNKE, CALIFORNIA FORENSIC MEDICAL GROUP, INC., WELLPATH LLC, WELLPATH MANAGEMENT, INC., JOSHUAH JACKSON, CHRISTIAN COLLAZO, TERESA VINCE, and DOE 1 to 20 and STATE OF CALIFORNIA and CALIFORNIA DEPARTMENT OF STATE HOSPITALS's

actions and inactions, entitling her to receive compensatory (wrongful death) and nominal damages against Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE, VERNON WARNKE, CALIFORNIA FORENSIC MEDICAL GROUP, INC., WELLPATH LLC, WELLPATH MANAGEMENT, INC., JOSHUAH JACKSON, CHRISTIAN COLLAZO, TERESA VINCE, and DOE 1 to 20; and punitive damages against Defendants VERNON WARNKE, JOSHUAH JACKSON, CHRISTIAN COLLAZO, TERESA VINCE, and DOE 1 to 20.

WHEREFORE, Plaintiff EMILY AYALA-ZIMMER prays for relief as hereunder appears.

## FIFTH CLAIM

### Unwarranted Interference with Familial Association

### (U.S. Const. Amend. I; 42 U.S.C. § 1983)

125. Plaintiff EMILY AYALA-ZIMMER asserts this Claim against Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE, VERNON WARNKE, CALIFORNIA FORENSIC MEDICAL GROUP, INC., WELLPATH LLC, WELLPATH MANAGEMENT, INC., JOSHUAH JACKSON, CHRISTIAN COLLAZO, TERESA VINCE, and DOE 1 to 20.

126. Plaintiff EMILY AYALA-ZIMMER realleges and incorporates the allegations of the preceding paragraphs 1 to 100, to the extent relevant and as if fully set forth in this Claim.

127. Plaintiff EMILY AYALA-ZIMMER shared a close relationship and special bond with STEVEN AYALA, which included deep attachments, commitments, and distinctively personal aspects of their lives and was typical of a loving parent-child relationship. Plaintiff EMILY AYALA-ZIMMER frequently visited or spoke with STEVEN AYALA.

128. *Individual / Municipal / Supervisory Liability*: Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE, VERNON WARNKE, CALIFORNIA FORENSIC MEDICAL GROUP, INC., WELLPATH LLC, WELLPATH MANAGEMENT, INC., JOSHUAH JACKSON, CHRISTIAN COLLAZO, TERESA VINCE, and DOE 1 to 20 caused the unwarranted interference with, and premature termination of, Plaintiff EMILY AYALA-ZIMMER's familial association with STEVEN AYALA, in the violation of the First Amendment to the United States Constitution.

129. Defendants VERNON WARNKE, JOSHUAH JACKSON, CHRISTIAN COLLAZO,

TERESA VINCE, and DOE 1 to 20's actions and inactions were motivated by evil motive or intent, involved reckless or callous indifference to constitutional rights, or were wantonly or oppressively done.

130. Plaintiff EMILY AYALA-ZIMMER was injured as a direct and proximate result of Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE, VERNON WARNKE, CALIFORNIA FORENSIC MEDICAL GROUP, INC., WELLPATH LLC, WELLPATH MANAGEMENT, INC., JOSHUAH JACKSON, CHRISTIAN COLLAZO, TERESA VINCE, and DOE 1 to 20 and STATE OF CALIFORNIA and CALIFORNIA DEPARTMENT OF STATE HOSPITALS's actions and inactions, entitling her to receive compensatory (wrongful death) and nominal damages against Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE, VERNON WARNKE, CALIFORNIA FORENSIC MEDICAL GROUP, INC., WELLPATH LLC, WELLPATH MANAGEMENT, INC., JOSHUAH JACKSON, CHRISTIAN COLLAZO, TERESA VINCE, and DOE 1 to 20; and punitive damages against Defendants VERNON WARNKE, JOSHUAH JACKSON, CHRISTIAN COLLAZO, TERESA VINCE, and DOE 1 to 20.

WHEREFORE, Plaintiff EMILY AYALA-ZIMMER pray for relief as hereunder appears.

**SIXTH CLAIM**

**Failure to Summon Medical Care**

**(Cal. Gov. Code § 845.6)**

131. Plaintiff ESTATE OF STEVEN AYALA (pursuant to California Code of Civil Procedure § 377.30) asserts this Claim against Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE, VERNON WARNKE, and DOE 11 to 20.

132. Plaintiff ESTATE OF STEVEN AYALA realleges and incorporates the allegations of the preceding paragraphs 1 to 100, to the extent relevant and as if fully set forth in this Claim.

133. *Individual Liability*: Defendants DOE 11 to 20 knew or had reason to know that STEVEN AYALA was in need of immediate medical care and failed to take reasonable action to summon such medical care, in violation of California Government Code § 845.6.

134. *Municipal / Supervisory Liability*: Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE, and VERNON WARNKE maintained policies or customs of action and inaction resulting in harm to STEVEN AYALA, in violation of California Government Code § 845.6.

135. *Vicarious Liability*: Defendants COUNTY OF MERCED and MERCED COUNTY SHERIFF'S OFFICE are vicariously liable, through the principles of *respondeat superior* and pursuant to California Government Code §§ 815.2(a), 845.6, for injuries proximately caused by the acts and omissions of employees acting within the scope of employment, including Defendants VERNON WARNKE and DOE 11 to 20.

136. Defendants VERNON WARNKE and DOE 11 to 20's actions and inactions constituted oppression, fraud, and/or malice resulting in great harm.

137. STEVEN AYALA was injured as a direct and proximate result of Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE, VERNON WARNKE, and DOE 11 to 20's actions and inactions, entitling Plaintiff ESTATE OF STEVEN AYALA to receive compensatory (survival) and nominal damages against Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE, VERNON WARNKE, and DOE 11 to 20; and punitive damages against Defendants VERNON WARNKE and DOE 11 to 20.

WHEREFORE, Plaintiff ESTATE OF STEVEN AYALA prays for relief as hereunder appears.

**SEVENTH CLAIM**

**Tom Bane Civil Rights Act**

**(Cal. Civ. Code § 52.1)**

138. Plaintiffs ESTATE OF STEVEN AYALA (pursuant to California Code of Civil Procedure § 377.30) and EMILY AYALA-ZIMMER assert this Claim against Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE, VERNON WARNKE, CALIFORNIA FORENSIC MEDICAL GROUP, INC., WELLPATH LLC, WELLPATH MANAGEMENT, INC., JOSHUAH JACKSON, CHRISTIAN COLLAZO, TERESA VINCE, and DOE 1 to 20.

139. Plaintiffs ESTATE OF STEVEN AYALA and EMILY AYALA-ZIMMER reallege and incorporate the allegations of the preceding paragraphs 1 to 137, to the extent relevant and as if fully set forth in this Claim.

Deliberate Indifference

140. *Individual Liability*: Defendants JOSHUAH JACKSON, CHRISTIAN COLLAZO, TERESA VINCE, and DOE 2 to 20 inadequately screened, classified, assigned, housed, monitored,

and/or responded to STEVEN AYALA based on an immediate medical need, putting him at substantial risk of suffering serious harm, without taking reasonable available measures to abate that risk, where a reasonable official in the circumstances would have appreciated the high degree of risk involved, with deliberate indifference or reckless disregard to rights protected by the Fourteenth Amendment to the United States Constitution; and Article I, Section 7(a) of the California Constitution.

141. *Municipal / Supervisory Liability*: Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE, VERNON WARNKE, CALIFORNIA FORENSIC MEDICAL GROUP, INC., WELLPATH LLC, WELLPATH MANAGEMENT, INC., and DOE 1 maintained policies or customs of action and inaction resulting in harm to STEVEN AYALA, with deliberate indifference or reckless disregard to rights protected by the Fourteenth Amendment to the United States Constitution; and Article I, Section 7(a) of the California Constitution.

Title II of the Americans with Disabilities Act & § 504 of the Rehabilitation Act

142. *Vicarious Liability*: Defendants JOSHUAH JACKSON, CHRISTIAN COLLAZO, TERESA VINCE, and DOE 2 to 20 failed reasonably to accommodate STEVEN AYALA's disability, where they could have provided a reasonable accommodation, including by performing a comprehensive mental health screening; performing a comprehensive classification and housing assignment; providing medical/mental health treatment; performing a comprehensive suicide risk assessment; timely and adequate monitoring and observation; obtaining informed opinions from medical/mental health professionals; and/or recommending urgent referral to an outside provider, with deliberate indifference or reckless disregard to rights protected by the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq*.; and the Rehabilitation Act, 29 U.S.C. § 794, *et seq*.

143. *Municipal / Vicarious Liability*: Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE, VERNON WARNKE, CALIFORNIA FORENSIC MEDICAL GROUP, INC., WELLPATH LLC, WELLPATH MANAGEMENT, INC., and DOE 1 maintained policies or customs of action and inaction resulting in harm to STEVEN AYALA, with deliberate indifference or reckless disregard to rights protected by the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq*.; and the Rehabilitation Act, 29 U.S.C. § 794, *et seq*.

\ \ \

Unwarranted Interference with Familial Association

144. *Individual / Municipal / Supervisory Liability*: Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE, VERNON WARNKE, CALIFORNIA FORENSIC MEDICAL GROUP, INC., WELLPATH LLC, WELLPATH MANAGEMENT, INC., JOSHUAH JACKSON, CHRISTIAN COLLAZO, TERESA VINCE, and DOE 1 to 20 caused the unwarranted interference with, and premature termination of, Plaintiff EMILY AYALA-ZIMMER's familial association with STEVEN AYALA, with deliberate indifference or reckless disregard to rights protected by the First and Fourteenth Amendments to the United States Constitution; and Article I, Section 7(a) of the California Constitution.

Failure to Summon Medical Care

145. *Individual Liability*: Defendants DOE 11 to 20 knew or had reason to know that STEVEN AYALA was in need of immediate medical care and failed to take reasonable action to summon such medical care, with deliberate indifference or reckless disregard to rights protected by California Government Code § 845.6.

146. *Municipal / Supervisory Liability*: Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE, and VERNON WARNKE maintained policies or customs of action and inaction resulting in harm to STEVEN AYALA, with deliberate indifference or reckless disregard to rights protected by California Government Code § 845.6.

Failure to Provide Timely Restorative Treatment

147. *Individual Liability*: Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE, VERNON WARNKE, CALIFORNIA FORENSIC MEDICAL GROUP, INC., WELLPATH LLC, WELLPATH MANAGEMENT, INC., JOSHUAH JACKSON, CHRISTIAN COLLAZO, TERESA VINCE, and DOE 1 to 20 failed timely to provide timely restorative treatment to STEVEN AYALA, and/or maintained policies or customs of action and inaction resulting in harm to STEVEN AYALA, with deliberate indifference or reckless disregard, in violation of California Penal Code § 1370 *et seq*. (Commitment Upon Finding of Incompetence).

\ \ \

\ \ \

* * *

(Allegations Common to All Theories)

148. *Vicarious Liability*: Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE, CALIFORNIA FORENSIC MEDICAL GROUP, INC., WELLPATH LLC, WELLPATH MANAGEMENT, INC. are vicariously liable, through the principles of *respondeat superior* and/or pursuant to California Government Code §§ 815.2(a), 845.6, for injuries proximately caused by the acts and omissions of employees acting within the scope of employment, including Defendants VERNON WARNKE, JOSHUAH JACKSON, CHRISTIAN COLLAZO, TERESA VINCE, and/or DOE 1 to 20.

149. Defendants VERNON WARNKE, JOSHUAH JACKSON, CHRISTIAN COLLAZO, TERESA VINCE, and DOE 1 to 20's actions and inactions constituted oppression, fraud, and/or malice resulting in great harm.

150. STEVEN AYALA and Plaintiff EMILY AYALA-ZIMMER were injured as a direct and proximate result of Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE, VERNON WARNKE, CALIFORNIA FORENSIC MEDICAL GROUP, INC., WELLPATH LLC, WELLPATH MANAGEMENT, INC., JOSHUAH JACKSON, CHRISTIAN COLLAZO, TERESA VINCE, and DOE 1 to 20 and STATE OF CALIFORNIA and CALIFORNIA DEPARTMENT OF STATE HOSPITALS's actions and inactions, entitling Plaintiffs ESTATE OF STEVEN AYALA and EMILY AYALA-ZIMMER to receive compensatory (survival and wrongful death) and treble damages and civil/statutory penalties against Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE, VERNON WARNKE, CALIFORNIA FORENSIC MEDICAL GROUP, INC., WELLPATH LLC, WELLPATH MANAGEMENT, INC., JOSHUAH JACKSON, CHRISTIAN COLLAZO, TERESA VINCE, and DOE 1 to 20; and punitive damages against Defendants VERNON WARNKE, JOSHUAH JACKSON, CHRISTIAN COLLAZO, TERESA VINCE, and DOE 1 to 20.

WHEREFORE, Plaintiffs ESTATE OF STEVEN AYALA and EMILY AYALA-ZIMMER pray for relief as hereunder appears.

\\\

\\\

**EIGHTH CLAIM**

**Intentional Infliction of Emotional Distress**

151. Plaintiff ESTATE OF STEVEN AYALA (pursuant to California Code of Civil Procedure § 377.30) asserts this Claim against Defendants CALIFORNIA FORENSIC MEDICAL GROUP, INC., WELLPATH LLC, WELLPATH MANAGEMENT, INC., JOSHUAH JACKSON, CHRISTIAN COLLAZO, TERESA VINCE, and DOE 1 to 20.

152. Plaintiff ESTATE OF STEVEN AYALA realleges and incorporates the allegations of the preceding paragraphs 1 to 150, to the extent relevant and as if fully set forth in this Claim.

153. *Individual Liability*: Defendants JOSHUAH JACKSON, CHRISTIAN COLLAZO, TERESA VINCE, and DOE 1 to 20 engaged in outrageous conduct, including by inadequately screening, classifying, assigning, housing, monitoring, and/or responding to STEVEN AYALA based on an immediate medical need, in violation of the United States and California Constitutions, federal and state laws, regulations, policies, standards, general orders, procedures, training, national and local standards, with intent or reckless disregard of the probability that STEVEN AYALA would suffer emotional distress and he did suffer severe emotional distress.

154. *Vicarious Liability*: Defendants CALIFORNIA FORENSIC MEDICAL GROUP, INC., WELLPATH LLC, and WELLPATH MANAGEMENT, INC. are vicariously liable, through the principles of *respondeat superior*, for injuries proximately caused by the acts and omissions of employees acting within the scope of employment, including Defendants JOSHUAH JACKSON, CHRISTIAN COLLAZO, TERESA VINCE, and DOE 1 to 10.

155. Defendants JOSHUAH JACKSON, CHRISTIAN COLLAZO, TERESA VINCE, and DOE 1 to 20's actions and inactions constituted oppression, fraud, and/or malice resulting in great harm.

156. STEVEN AYALA was injured as a direct and proximate result of Defendants JOSHUAH JACKSON, CHRISTIAN COLLAZO, TERESA VINCE, and DOE 1 to 20's actions and inactions, entitling Plaintiff ESTATE OF STEVEN AYALA to receive compensatory (survival) and punitive damages against Defendants CALIFORNIA FORENSIC MEDICAL GROUP, INC., WELLPATH LLC, WELLPATH MANAGEMENT, INC., JOSHUAH JACKSON, CHRISTIAN COLLAZO, TERESA VINCE, and DOE 1 to 20.

WHEREFORE, Plaintiff ESTATE OF STEVEN AYALA prays for relief as hereunder appears.

**NINTH CLAIM**

**Negligence**

157. Plaintiff ESTATE OF STEVEN AYALA (pursuant to California Code of Civil Procedure § 377.30) asserts this Claim against Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE, VERNON WARNKE, CALIFORNIA FORENSIC MEDICAL GROUP, INC., WELLPATH LLC, WELLPATH MANAGEMENT, INC., JOSHUAH JACKSON, CHRISTIAN COLLAZO, TERESA VINCE, and DOE 1 to 20.

158. Plaintiff ESTATE OF STEVEN AYALA realleges and incorporates the allegations of the preceding paragraphs 1 to 156, to the extent relevant and as if fully set forth in this Claim.

159. *Individual Liability*: Defendants JOSHUAH JACKSON, CHRISTIAN COLLAZO, TERESA VINCE, and DOE 2 to 20 owed STEVEN AYALA a duty of care and breached that duty, including by inadequately screening, classifying, assigning, housing, monitoring, and/or responding to STEVEN AYALA based on an immediate medical need, in violation of the United States and California Constitutions, federal and state laws, regulations, policies, standards, general orders, procedures, training, national and local standards, California Penal Code § 1370 *et seq*., and/or California Civil Code § 1714(a).

160. *Supervisory Liability*: Defendants VERNON WARNKE and DOE 1 owed STEVEN AYALA a duty of care, including through Defendants VERNON WARNKE and DOE 1's own conduct in creating or increasing an unreasonable risk of harm to STEVEN AYALA; through Defendants VERNON WARNKE and DOE 1's special relationships (employer-employee) with Defendants JOSHUAH JACKSON, CHRISTIAN COLLAZO, TERESA VINCE, and DOE 2 to 20; and/or through Defendants VERNON WARNKE and DOE 1's special relationships (public protection and/or jailer-prisoner) with, and affirmative duty to protect, STEVEN AYALA, and breached that duty including by maintaining policies or customs of action and inaction which resulted in harm to STEVEN AYALA in violation of the United States and California Constitutions, federal and state laws, regulations, policies, standards, general orders, procedures, training, national and local standards, California Penal Code § 1370 *et seq*. and/or California Civil Code § 1714(a).

161. *Municipal Liability*: Defendants COUNTY OF MERCED and MERCED COUNTY SHERIFF'S OFFICE maintained policies or customs of action and inaction resulting in harm to STEVEN AYALA, in violation of California Penal Code § 1370 *et seq*., California Government Code § 845.6 and/or California Code of Regulations title 15 §§ 1027, 1027.5.

162. *Vicarious Liability*: Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE, CALIFORNIA FORENSIC MEDICAL GROUP, INC., WELLPATH LLC, WELLPATH MANAGEMENT, INC. are vicariously liable, through the principles of *respondeat superior* and/or pursuant to California Government Code §§ 815.2(a), 845.6, for injuries proximately caused by the acts and omissions of employees acting within the scope of employment, including Defendants VERNON WARNKE, JOSHUAH JACKSON, CHRISTIAN COLLAZO, TERESA VINCE, and/or DOE 1 to 20.

163. Defendants VERNON WARNKE, JOSHUAH JACKSON, CHRISTIAN COLLAZO, TERESA VINCE, and DOE 1 to 20's actions and inactions constituted oppression, fraud, and/or malice resulting in great harm.

164. STEVEN AYALA was injured as a direct and proximate result of Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE, VERNON WARNKE, CALIFORNIA FORENSIC MEDICAL GROUP, INC., WELLPATH LLC, WELLPATH MANAGEMENT, INC., JOSHUAH JACKSON, CHRISTIAN COLLAZO, TERESA VINCE, and DOE 1 to 20 and STATE OF CALIFORNIA and CALIFORNIA DEPARTMENT OF STATE HOSPITALS's actions and inactions, entitling Plaintiff ESTATE OF STEVEN AYALA to receive compensatory (survival) damages against Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE, VERNON WARNKE, CALIFORNIA FORENSIC MEDICAL GROUP, INC., WELLPATH LLC, WELLPATH MANAGEMENT, INC., JOSHUAH JACKSON, CHRISTIAN COLLAZO, TERESA VINCE, and DOE 1 to 20; and punitive damages against Defendants VERNON WARNKE, JOSHUAH JACKSON, CHRISTIAN COLLAZO, TERESA VINCE, and DOE 1 to 20.

WHEREFORE, Plaintiff ESTATE OF STEVEN AYALA prays for relief as hereunder appears.

\ \ \

\ \ \

**TENTH CLAIM**

**Wrongful Death**

**(Cal. Code Civ. Proc. § 377.60)**

165. Plaintiff EMILY AYALA-ZIMMER asserts this Claim against Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE, VERNON WARNKE, CALIFORNIA FORENSIC MEDICAL GROUP, INC., WELLPATH LLC, WELLPATH MANAGEMENT, INC., JOSHUAH JACKSON, CHRISTIAN COLLAZO, TERESA VINCE, and DOE 1 to 20.

166. Plaintiff EMILY AYALA-ZIMMER realleges and incorporates the allegations of the preceding paragraphs 1 to 164, to the extent relevant and as if fully set forth in this Claim.

167. STEVEN AYALA and Plaintiff EMILY AYALA-ZIMMER shared a natural and loving parent-child relationship. STEVEN AYALA is the biological parent of Plaintiff EMILY AYALA-ZIMMER. STEVEN AYALA held out Plaintiff EMILY AYALA-ZIMMER as his own. Plaintiff EMILY AYALA-ZIMMER is STEVEN AYALA's heir and successor-in-interest. STEVEN AYALA frequently visited or spoke with Plaintiff EMILY AYALA-ZIMMER.

168. *Individual Liability*: Defendants JOSHUAH JACKSON, CHRISTIAN COLLAZO, TERESA VINCE, and DOE 2 to 20 caused STEVEN AYALA's death by wrongful act and neglect, including by inadequately screening, classifying, assigning, housing, monitoring, and/or responding to STEVEN AYALA based on an immediate medical need, in violation of the United States and California Constitutions, federal and state laws, regulations, policies, standards, general orders, procedures, training, national and local standards, California Penal Code § 1370 *et seq*., and/or California Civil Code § 1714(a).

169. *Municipal / Supervisory Liability*: Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE, VERNON WARNKE, CALIFORNIA FORENSIC MEDICAL GROUP, INC., WELLPATH LLC, WELLPATH MANAGEMENT, INC., and DOE 1 caused STEVEN AYALA's death by wrongful act and neglect, including by maintained policies or customs of action and inaction resulting in harm to STEVEN AYALA, in violation of the United States and California Constitutions, federal and state laws, regulations, policies, standards, general orders, procedures, training, national and local standards, California Penal Code § 1370 *et seq*. and/or California Civil Code §

1714(a).

170. *Vicarious Liability*: Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE, and CALIFORNIA FORENSIC MEDICAL GROUP, INC., WELLPATH LLC, WELLPATH MANAGEMENT, INC. are vicariously liable, through the principles of *respondeat superior* and/or pursuant to California Government Code §§ 815.2(a), 845.6, for injuries proximately caused by the acts and omissions of employees acting within the scope of employment, including Defendants VERNON WARNKE, JOSHUAH JACKSON, CHRISTIAN COLLAZO, TERESA VINCE, and/or DOE 1 to 20.

171. Defendants VERNON WARNKE, JOSHUAH JACKSON, CHRISTIAN COLLAZO, TERESA VINCE, and DOE 1 to 20's actions and inactions constituted oppression, fraud, and/or malice resulting in great harm.

172. STEVEN AYALA died as a direct and proximate result of Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE, VERNON WARNKE, CALIFORNIA FORENSIC MEDICAL GROUP, INC., WELLPATH LLC, WELLPATH MANAGEMENT, INC., JOSHUAH JACKSON, CHRISTIAN COLLAZO, TERESA VINCE, and DOE 1 to 20 and STATE OF CALIFORNIA and CALIFORNIA DEPARTMENT OF STATE HOSPITALS's actions and inactions, entitling Plaintiff EMILY AYALA-ZIMMER to receive compensatory (wrongful death) damages against Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE, VERNON WARNKE, CALIFORNIA FORENSIC MEDICAL GROUP, INC., WELLPATH LLC, WELLPATH MANAGEMENT, INC., JOSHUAH JACKSON, CHRISTIAN COLLAZO, TERESA VINCE, and DOE 1 to 20; and punitive damages against Defendants VERNON WARNKE, JOSHUAH JACKSON, CHRISTIAN COLLAZO, TERESA VINCE, and DOE 1 to 20.

WHEREFORE, Plaintiff EMILY AYALA-ZIMMER prays for relief as hereunder appears.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs ESTATE OF STEVEN AYALA and EMILY AYALA-ZIMMER seek Judgment as follows:

1. For an award of compensatory, general, special, and nominal damages (including survival and wrongful death damages under federal and state law) against Defendants COUNTY OF MERCED,

MERCED COUNTY SHERIFF'S OFFICE, VERNON WARNKE, CALIFORNIA FORENSIC MEDICAL GROUP, INC., WELLPATH LLC, WELLPATH MANAGEMENT, INC., JOSHUAH JACKSON, CHRISTIAN COLLAZO, TERESA VINCE, and DOE 1 to 20, according to proof at trial;

2. For an award of exemplary/punitive damages against Defendants VERNON WARNKE, JOSHUAH JACKSON, CHRISTIAN COLLAZO, TERESA VINCE, and DOE 1 to 20, in an amount sufficient to deter and to make an example of them, because their actions and/or inactions, as alleged, were motivated by evil motive or intent, involved reckless or callous indifference to constitutionally and statutorily protected rights, or were wantonly or oppressively done; and/or constituted oppression, fraud, or malice resulting in great harm;

3. For funeral and/or burial expenses;

4. For an award of actual damages, treble damages, punitive damages, civil penalties, and any other available relief against Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE, VERNON WARNKE, CALIFORNIA FORENSIC MEDICAL GROUP, INC., WELLPATH LLC, WELLPATH MANAGEMENT, INC., JOSHUAH JACKSON, CHRISTIAN COLLAZO, TERESA VINCE, and DOE 1 to 20, pursuant to California Civil Code §§ 52, 52.1, and any other statute as may be applicable (except that no punitive damages are sought against Defendants COUNTY OF MERCED and MERCED COUNTY SHERIFF'S OFFICE, pursuant to California Civil Code § 818);

5. For an award of reasonable attorneys' fees and costs, pursuant to 42 U.S.C. § 1988, 29 U.S.C. § 794, 42 U.S.C. § 12205, California Civil Code § 52.1, California Code of Civil Procedure § 1021.5, and any other statute as may be applicable;

6. For interest; and

\ \ \

\ \ \

\ \ \

\ \ \

\ \ \

\ \ \

7. For an award of any other further relief, as the Court deems fair, just, and equitable.

Dated: September 15, 2025

Respectfully Submitted,

By: ______________________________

Mark E. Merin
Paul H. Masuhara
LAW OFFICE OF MARK E. MERIN
1010 F Street, Suite 300
Sacramento, California 95814
Telephone: (916) 443-6911
Facsimile: (916) 447-8336

Attorneys for Plaintiffs
ESTATE OF STEVEN AYALA
and EMILY AYALA-ZIMMER

**JURY TRIAL DEMAND**

A JURY TRIAL IS DEMANDED on behalf of Plaintiffs ESTATE OF STEVEN AYALA and EMILY AYALA-ZIMMER.

Dated: September 15, 2025

Respectfully Submitted,

By: ______________________________

Mark E. Merin
Paul H. Masuhara
LAW OFFICE OF MARK E. MERIN
1010 F Street, Suite 300
Sacramento, California 95814
Telephone: (916) 443-6911
Facsimile: (916) 447-8336

Attorneys for Plaintiffs
ESTATE OF STEVEN AYALA
and EMILY AYALA-ZIMMER